PEOPLE v HARTWICK

Docket No. 312308. Submitted October 8, 2013, at Detroit. Decided
November 19, 2013, at 9:00 a.m. Leave to appeal sought.

Richard L. Hartwick was charged in the Oakland Circuit Court with
manufacturing marijuana and possessing it with the intent to deliver
it. Defendant moved to dismiss the charges on the bases that he was
entitled to immunity under § 4 of the Michigan Medical Marihuana
Act (MMMA), MCL 333.26424, and dismissal pursuant to the affir-
mative defense provided under § 8 of the MMMA, MCL 333.26428.
The trial court, Colleen A. O'Brien, J., held that defendant was not
entitled to immunity under § 4 and denied defendant's requests for
dismissal under § 8 or to present a § 8 defense at trial. Defendant,
who alleged that he possessed a registry identification card issued
pursuant to the MMMA that identified him as a patient and his own
caregiver and also alleged that he possessed five additional cards for
five patients for whom he acted as a caregiver under the MMMA, filed
a delayed application for leave to appeal in the Court of Appeals. The
Court of Appeals denied the application in an unpublished order
entered October 11, 2012 (Docket No. 312308). Defendant sought
leave to appeal in the Supreme Court, which, in lieu of granting leave
to appeal, entered an order remanding the matter to the Court of
Appeals for consideration as on leave granted. *People v Hartwick*, 493
Mich 950 (2013).

   The Court of Appeals *held*:

   1. Proper analysis of the MMMA must focus on its overriding
medical purpose. The expressed purpose of the act is to allow a
limited class of individuals the medical use of marijuana. The act's
protections are limited to individuals suffering from serious or
debilitating medical conditions or symptoms, to the extent that the
individual's marijuana use is carried out in accordance with the
provisions of the act.

   2. The trial court acts as the fact-finder to determine whether
§ 4 immunity applies. The trial court clearly determined that
defendant possessed five more marijuana plants than he was
permitted to possess under MCL 333.26424(b)(2).

   3. Mere possession of a state-issued registry identification card
does not guarantee that the cardholder's subsequent use and

production of marijuana is for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition. MCL 333.26424(d)(1) and (2).

4. Defendant was not holding true to the medical purposes of the MMMA. Defendant failed to introduce evidence regarding some of his patients' medical conditions, the amount of marijuana they reasonably required for treatment and for how long the treatment should continue, and the identity of their physicians. Defendant failed to produce sufficient evidence to qualify for the presumption of immunity under MCL 333.26424(d). Defendant is not entitled to immunity under § 4 of the MMMA.

5. A defendant must demonstrate three elements before the defendant can assert the affirmative defense provided in MCL 333.26428(a). Section 8(a) requires evidence of every element for the defense to be presumed valid.

6. Section 8 weaves together the obligations of each individual involved in the prescription, use, and production of marijuana for medical purposes. Under the act, doctors must have an ongoing relationship with their patients, where the doctor continuously reviews the patient's condition and revises the patient's marijuana prescription accordingly. Further, patients must provide certain basic information regarding their marijuana use to their caregivers. To be protected under the MMMA, caregivers must ask for basic information detailing how much marijuana the patient is supposed to use and how long that use is supposed to continue. Patients and caregivers, for their own protection from criminal prosecution, must comply with the medical purpose of the MMMA: patients by supplying the necessary documentation to their caregivers and caregivers by only supplying patients who provide the statutorily mandated information.

7. Possession of a registry identification card, without more, does nothing to address the medical requirements of § 8. It offers no proof of the existence of an ongoing relationship between a patient and a physician, as mandated by § 8(a)(1). It does not prove that the caregiver is aware of how much marijuana the patient is prescribed or for how long the patient is supposed to use the drug, as mandated by § 8(a)(2). It does not establish that the marijuana provided by the caregiver is actually being used by the patient for medical reasons, as mandated by § 8(a)(3). Possession of a registry identification card is necessary, but not sufficient, to comply with the provisions of the MMMA, but such possession does not satisfy the requirements of § 8 for a total defense to a charge of violation of the MMMA.

8. Defendant presented evidence of a bona fide physician-patient relationship between him and his doctor but presented no evidence that his patients have bona fide physician-patient relationships with their certifying physicians. Although the MMMA does not explicitly impose a duty on patients to provide such basic medical information to their primary caregivers, the plain language of § 8 requires such information for a patient or caregiver to effectively assert the § 8 defense. The trial court correctly ruled that defendant did not present valid evidence with respect to the first element of the § 8 defense.

9. The volume limitations listed in MCL 333.26424(b) do not define what is a "reasonably necessary" amount of marijuana for purposes of establishing a § 8 defense. Defendant failed to satisfy the second element of the § 8 defense because he lacks the requisite knowledge of how much marijuana is required to treat his patients' conditions or his own condition. The trial court properly held that defendant did not create a question of fact regarding this issue.

10. A letter from a patient's physician to the caregiver that details a bona fide physician-patient relationship, the patient's medical condition, how much marijuana is needed to alleviate the condition, and for how long the patient should take the marijuana can serve as evidence that the marijuana supplied by the caregiver is actually used for medical purposes under MCL 333.26428(a)(3).

Affirmed.

JANSEN, J., concurring, concurred in the result only.

1. CONTROLLED SUBSTANCES — MICHIGAN MEDICAL MARIHUANA ACT — PRESUMPTIONS — MEDICAL USE OF MARIJUANA.

Section 4(d) of the Michigan Medical Marihuana Act creates a presumption that if a patient or primary caregiver is in possession of a registry identification card and an amount of marijuana that does not exceed the amount allowed under the act, he or she is engaged in the medical use of marijuana in accordance with the act; the prosecution may rebut this presumption with evidence that conduct related to marijuana was not for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition (MCL 333.26424(d)(2)).

2. CONTROLLED SUBSTANCES — MICHIGAN MEDICAL MARIHUANA ACT — PRESUMPTIONS — REGISTRY IDENTIFICATION CARDS.

Mere possession of a state-issued registry identification card does not guarantee that the cardholder's subsequent use and production of

marijuana was for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition (MCL 333.26424(d)).

3. CONTROLLED SUBSTANCES — MICHIGAN MEDICAL MARIHUANA ACT — REGISTRY IDENTIFICATION CARDS — AFFIRMATIVE DEFENSE — MEDICAL REQUIREMENTS.

Possession of a registry identification card, without more, does nothing to address the medical requirements for assertion of the affirmative defense provided in § 8 of the Michigan Medical Marihuana Act; it offers no proof of the existence of an ongoing relationship between a patient and a physician, as mandated by § 8(a)(1); it does not prove that the caregiver is aware of how much marijuana the patient has been prescribed or for how long the patient is supposed to use the drug, as mandated by § 8(a)(2); it does not establish that the marijuana provided by the caregiver is actually being used by the patient for medical reasons, as mandated by § 8(a)(3) (MCL 333.26428(a)(1) to (3)).

4. CONTROLLED SUBSTANCES — MICHIGAN MEDICAL MARIHUANA ACT — AFFIRMATIVE DEFENSES — REASONABLY NECESSARY AMOUNT OF MARIJUANA.

The volume limitations listed in § 4(b) of the Michigan Medical Marihuana Act do not define what is a "reasonably necessary" amount of marijuana for purposes of establishing an affirmative defense to any prosecution involving marijuana under § 8 of the act (MCL 333.26424(b); MCL 333.26428).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

*Frederick J. Miller* for defendant.

Before: SAAD, P.J., and SAWYER and JANSEN, JJ.

SAAD, P.J. Defendant appeals the trial court's order that (1) held that he was not entitled to immunity under § 4 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26424, and (2) denied defendant's requests for dismissal under § 8 of the MMMA,

MCL 333.26428, and to present a § 8 defense at trial. For the reasons set forth in this opinion, we affirm.

### I. NATURE OF THE CASE

Defendant, who was arrested for illegally growing and possessing marijuana,[1] holds a registry identification card under the MMMA, MCL 333.26421 *et seq*. He claims that mere possession of the card entitles him to (1) immunity from prosecution under § 4 of the MMMA and, in the alternative, (2) an affirmative defense under § 8 of the MMMA. The trial court rejected defendant's theory and instead held that defendant was not entitled to immunity under § 4 and that he had not presented the requisite evidence to make an affirmative defense under § 8.

We uphold the trial court and fully explore defendant's specific arguments that his possession of a registry identification card automatically immunizes him from prosecution under § 4 and grants him a complete defense under § 8. We reject these arguments because they ignore the primary purpose and plain language of the MMMA, which is to ensure that any marijuana production and use permitted by the statute is medical in nature and only for treating a patient's debilitating medical condition. See *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012) ("the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms"). To adopt defendant's argument would also put the MMMA at risk of abuse and undermine the act's stated aim of helping a select group of people with serious medical conditions that may be alleviated if treated in compli-

---

[1] The MMMA uses the variant "marihuana." Throughout this opinion, we use the more common spelling "marijuana" unless quoting from the MMMA or cases that use the variant spelling.

ance with the MMMA. We therefore reject defendant's claim and hold that the trial court did not abuse its discretion when it (1) ruled that defendant was not entitled to immunity from criminal prosecution under § 4 and (2) denied defendant's request for dismissal under § 8 and held that he could not present the § 8 defense at trial.

## II. FACTS AND PROCEDURAL HISTORY

Detective Mark Ferguson, a member of the Oakland County Sheriff's Office, received a tip that someone was distributing marijuana at a single-family home in Pontiac. On September 27, 2011, Detective Ferguson visited the house in question and met defendant outside. Detective Ferguson asked defendant if there was marijuana in the house. Defendant replied that there was and that he was growing marijuana in compliance with the MMMA. Ferguson asked if he could see the marijuana, and defendant led him inside the house.

Defendant and Detective Ferguson went into a back bedroom that served as a grow room for the marijuana. The grow room door was unlocked and the room housed many marijuana plants. Detective Ferguson then asked if he could search the house; defendant agreed. Throughout the home, Detective Ferguson found additional marijuana plants, a shoebox of dried marijuana in the freezer, mason jars filled with marijuana in defendant's bedroom, and amounts of the drug that were not in containers near an entertainment stand in the living room.

Detective Ferguson then asked defendant if he sold marijuana. Defendant replied that he did not. He told Detective Ferguson that he acted as a caregiver for patients who used marijuana.

The prosecuting attorney subsequently charged defendant with manufacturing marijuana and possessing it with the intent to deliver it. After the prosecutor presented his proofs at the preliminary examination, defendant moved to dismiss the charges under the MMMA's § 4 grant of immunity and the § 8 defense provision. In the alternative, defendant sought to assert a § 8 defense at trial.

THE EVIDENTIARY HEARING

Defendant was the only testifying witness at the evidentiary hearing. He claimed that (1) he was a medical marijuana patient and his own caregiver, and (2) he also served as a caregiver for five additional medical marijuana patients. Defendant possessed registry identification cards for himself and his five patients, and submitted the cards as evidence. The prosecution stipulated the validity of defendant's own registry identification card. Further, the cards demonstrate that defendant served as caregiver for the five additional patients in September 2011, when the police recovered marijuana from his home.[2] Yet defendant was unfamiliar with the health background of his patients and could not identify the maladies or "debilitating conditions" suffered by two of his patients. He was not aware of how much marijuana any of his patients were supposed to use to treat their respective conditions or for how long his patients were supposed to use "medical marijuana." And he could not name each patient's certifying physician.

Defendant also testified that he had 71 plants in small Styrofoam cups. On cross-examination, the pros-

---

[2] Actually, his father's home—defendant explained that his father owns the property.

ecutor asked defendant about this number, because Detective Ferguson's report had indicated that there were 77 plants. Defendant responded that the detective had included "six plants that I had just cut down and there was still the stalk there." The prosecutor pressed this point in closing arguments, noting that defendant was not entitled to dismissal under § 4 because he had more plants than permitted by that section.[3]

But the prosecutor stressed that the number of plants was not the ultimate issue in the case. Instead, the prosecutor stated that he had rebutted defendant's § 4(d) presumption of immunity by showing defendant's failure to comply with the underlying purpose of the MMMA: the use and manufacture of marijuana for *medical* purposes. The prosecutor noted that "by [defendant's] own testimony he could not have been [providing marijuana to people diagnosed with a debilitating medical condition because] he doesn't know if anybody had a debilitating medical condition, what that is, what they require to use it. There's no way that it's possible for him to have been acting in accordance with the act."

The trial court agreed with the prosecutor's reasoning and held that defendant was not entitled to dismissal under § 4. It said it agreed with the prosecutor but provided no other reasoning on the record.

With respect to § 8, the prosecutor referred to the fact that defendant did not know the amount of marijuana necessary to treat his patients' debilitating medical conditions—meaning that defendant could not meet the evidentiary requirements of the § 8 affirmative

---

[3] The parties stipulated the admission of an Oakland County Sheriff's Office forensic laboratory report, which indicates that 104.6 grams (roughly 3.69 ounces) of "plant material" were recovered from defendant's house.

defense. Defense counsel replied that defendant's possession of patient and caregiver identification cards absolved defendant of this failure and that the cards were all defendant needed "to establish the fact that these people were authorized by the state of Michigan and approved."

The trial court rejected defendant's argument, relied on the plain language of the statute, and held that defendant failed to produce testimony to support the defense under § 8. The court stressed that it heard no testimony regarding a "bona fide physician-patient relationship or a likelihood of receiving therapeutic or palliative benefit from the medical use of marijuana," or any testimony on whether defendant possessed no more marijuana than reasonably necessary for medical use. Accordingly, the trial court held that defendant failed to show that he was entitled to dismissal under § 8. In addition, because defendant did not present evidence to support all the elements of a § 8 affirmative defense, the court held that defendant could not raise that affirmative defense at trial.

Defendant filed a delayed application for leave to appeal in this Court in September 2012 and the application was denied.[4] Defendant then sought leave to appeal in the Michigan Supreme Court, which, in lieu of granting leave to appeal, entered an April 1, 2013, order remanding this case to the Court of Appeals for consideration as on leave granted.[5]

### III. STANDARD OF REVIEW

A trial court's decision on a motion to dismiss is reviewed for an abuse of discretion. *People v Bylsma,*

---

[4] *People v Hartwick*, unpublished order of the Court of Appeals, entered October 11, 2012 (Docket No. 312308).

[5] *People v Hartwick*, 493 Mich 950 (2013).

493 Mich 17, 26; 825 NW2d 543 (2012). "A trial court's findings of fact may not be set aside unless they are clearly erroneous." *Id.* A finding is "clearly erroneous 'if the reviewing court is left with a definite and firm conviction that the trial court made a mistake.' " *Id.*, quoting *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Questions of statutory interpretation, including interpretation of the MMMA, are reviewed de novo. See *Kolanek*, 491 Mich at 393.

IV. ANALYSIS

A. THE MMMA

The MMMA originated as a citizen's initiative petition and was approved by the people of Michigan in November 2008. *Kolanek*, 491 Mich at 393. Its expressed purpose is to allow a "limited class of individuals the medical use of marijuana . . . ." *Id.* The statute emphatically "does *not* create a general right for individuals to use and possess marijuana in Michigan." *Id.* at 394. Nonmedical-related possession, manufacture, and delivery of the drug (and medical-related possession, manufacture, and delivery not in compliance with the MMMA) "remain punishable offenses under Michigan law." *Id.* and n 24 (citing the specific state laws that criminalize the possession, manufacture, and delivery of marijuana). The MMMA is best viewed as an "exception to the Public Health Code's prohibition on the use of controlled substances [that permits] the medical use of marijuana when carried out in accordance with the MMMA's provisions." *Bylsma*, 493 Mich at 27. The statute's protections are "limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use 'is carried out in accordance with the provisions of

[the MMMA].' " *Kolanek*, 491 Mich at 394, quoting MCL 333.26427(a).

Accordingly, proper analysis of the MMMA must focus on its overriding medical purpose. The ballot initiative approved by the people specifically referred to "physician approved use of marijuana by registered patients with debilitating medical conditions including cancer, glaucoma, HIV, AIDS, hepatitis C, MS and other conditions as may be approved by the Department of Community Health." Michigan Proposal 08-1 (November 2008); see *Kolanek*, 491 Mich at 393 n 22. The MMMA explicitly states in its title the law's medical intentions ("[a]n initiation of Legislation to allow under state law the medical use of marihuana . . . ."),[6] and the MMMA makes explicit reference to its palliative, treatment-based goals throughout ("[m]odern medical research . . . has discovered beneficial uses for marihuana in treating or alleviating the pain, nausea, and other symptoms associated with a variety of debilitating medical conditions").[7]

With these medical aims in mind, we turn to the specific requirements of the statute's immunity provisions (§ 4)[8] and its § 8[9] defenses.[10]

B. SECTION 4 IMMUNITY

Section 4 contains multiple parts, only some of which are relevant to this case. "Sections 4(a) and 4(b) contain

---

[6] 2008 PA, Initiated Law 1, title.

[7] MCL 333.26422(a).

[8] MCL 333.26424.

[9] MCL 333.26428.

[10] We note that our Supreme Court has held that "[b]ecause 'the plain language of § 8 does not require compliance with the requirements of § 4,' a defendant who is unable to satisfy the requirements of § 4 may nevertheless assert the § 8 affirmative defense." *Bylsma*, 493 Mich at 28. As such, "we . . . examine these provisions independently." *Id.*

parallel immunity provisions that apply, respectively, to registered qualifying patients and to registered primary caregivers." *Bylsma*, 493 Mich at 28. With some conditions, § 4(a) provides "qualifying patient[s]"[11] who hold "registry identification card[s]"[12] immunity from criminal prosecution and other penalties. *Kolanek*, 491 Mich at 394. In the relevant part, it states:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount. [MCL 333.26424(a).]

Section 4(b) provides similar rights to a "primary caregiver,"[13] who, among other things: (1) grows marijuana for patients "to whom he or she is connected through the department's registration process"; (2) has

---

[11] MCL 333.26423(i) defines "qualifying patient" or "patient" as: "a person who has been diagnosed by a physician as having a debilitating medical condition."

[12] MCL 333.26423(j) defines "registry identification card" as: "a document issued by the department that identifies a person as a registered qualifying patient or registered primary caregiver."

[13] MCL 333.26423(h) defines "primary caregiver" or "caregiver" as: "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs or a felony that is an assaultive crime . . . ."

been "issued and possesses a registry identification card"; and (3) complies with certain volume and security requirements. MCL 333.26424(b)(1) to (3).[14]

Section 4(d) creates a presumption that if the patient or primary caregiver (1) is "in possession of a registry identification card" and (2) "is in possession of an amount of marihuana that does not exceed the amount allowed under this act," he is engaged in the medical use of marijuana in accordance with the MMMA. MCL 333.26424(d)(1) and (2). The prosecution may rebut this presumption with "evidence that conduct related to marihuana was not for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition . . . ." MCL 333.26424(d)(2).

Here, defendant relies on § 4(b), but ignores § 4(d). Defendant asserts that the number of plants he allegedly possessed places his conduct within the number of marijuana plants permissible under § 4(b). He then claims that mere possession of a valid, state-issued registry identification card prevents the prosecution from rebutting the presumption that he was "engaged in the medical use of marihuana in accordance with this act" under § 4(d).

Neither argument is convincing. The first, related to the number of plants possessed by defendant, is moot. The trial court acts as the fact-finder to determine whether § 4 immunity applies. *People v Jones*, 301 Mich App 566, 576–577; 837 NW2d 7 (2013). Here, the trial court clearly agreed with the prosecution's count of defendant's marijuana plants: 77, not the 71 claimed by defendant. Accord-

---

[14] Specifically, like patients (as specified in § 4(a)), primary caregivers cannot possess more than 2.5 ounces of usable marijuana for each qualifying patient and 12 marijuana plants kept in an "enclosed, locked facility . . . ."

ingly, defendant possessed 77 plants—five more than permitted to him by § 4(b)(2).[15]

Yet, were we to accept defendant's numerical assessment, defendant would nonetheless not qualify for § 4 immunity. His interpretation of the MMMA ignores the underlying medical purposes of the statute, explicitly referred to in § 4(d). Mere possession of a state-issued card—even one backed by a state investigation—does not guarantee that the cardholder's *subsequent* use and production of marijuana was "for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition . . . ." MCL 333.26424(d)(2). Indeed, defendant's testimony provided ample evidence that he was not holding true to the medical purposes of the statute. He failed to introduce evidence of (1) some of his patients' medical conditions, (2) the amount of marijuana they reasonably required for treatment and how long the treatment should continue, and (3) the identity of their physicians.

Accordingly, we hold that defendant failed to produce sufficient evidence at the evidentiary hearing to qualify for the § 4(d) presumption of immunity and that he is not entitled to immunity under § 4 of the MMMA.

C. SECTION 8(a) DEFENSE

The § 8(a) defense specifies three elements that an MMMA defendant must demonstrate before he can assert this defense. This burden is premised on the medical reasons that underlie the statute, and the

---

[15] Under § 4(b)(2), defendant could possess up to 72 plants and, subject to certain volume limitations, remain in compliance with the MMMA. The statute allows him to possess 12 plants for himself, plus 12 plants for every patient for whom he is a primary caregiver (6 x 12 = 72).

specified elements are inclusive: § 8(a) requires evidence of every element for the defense to be presumed valid. MCL 333.26428(a).[16]

Before we address each subdivision of § 8(a), it is important to consider the mandate of the section as a whole. Because the MMMA creates a limited statutory exception to the general federal and state prohibition of marijuana, the MMMA provides a comprehensive statutory scheme that must be followed if caregivers and patients wish to comply with the law. Section 8 outlines the possible defenses a defendant can raise when charged with violating the act. In so doing, the section weaves together the obligations of each individual involved in the prescription, use, and production of marijuana for medical purposes. Under the act, doctors must have an ongoing relationship with their patients, where the doctor continuously reviews the patient's condition and revises his marijuana prescription accordingly.[17]

---

[16] The Michigan Supreme Court recently outlined very specific steps and procedural outcomes for MMMA defendants who assert the § 8(a) affirmative defense. If the defendant establishes the three § 8(a) elements during a pretrial evidentiary hearing, and there are no material questions of fact, the defendant is entitled to dismissal of the charges. *Kolanek*, 491 Mich at 412. If a defendant establishes evidence of each element, but there are still material questions of fact, then the § 8(a) affirmative defense must be submitted to a jury. *Id.* Finally, if no reasonable juror could conclude that the defendant has satisfied the elements of the § 8(a) affirmative defense, then the defense fails as a matter of law and the defendant is precluded from asserting it at trial. *Id.* at 412–413.

Here, the trial court held that no reasonable juror could conclude that defendant had satisfied the elements of the § 8(a) affirmative defense. Accordingly, it ruled that the defense failed as a matter of law and that defendant was precluded from asserting it at trial.

[17] The importance of a legitimate, ongoing relationship between the marijuana-prescribing doctor and the marijuana-using patient is stressed throughout the MMMA. Section 4(f), which provides a qualified immunity for physicians, mandates that the immunity only applies to physi-

Further, patients must provide certain basic information regarding their marijuana use to their caregivers. And caregivers, to be protected under the MMMA, must ask for this basic information—specifically, information that details, as any pharmaceutical prescription would, how much marijuana the patient is supposed to use and how long that use is supposed to continue. Though patients and caregivers are ordinary citizens, not trained medical professionals, the MMMA's essential mandate is that marijuana be used for medical purposes. Accordingly, for their own protection from criminal prosecution, patients and caregivers must comply with this medical purpose—patients by supplying the necessary documentation to their caregivers, and caregivers by only supplying patients who provide the statutorily mandated information.

Possession of a registry identification card, without more, does nothing to address these § 8 medical requirements. It offers no proof of the existence of an ongoing relationship between patient and physician, as mandated by § 8(a)(1). Nor does it prove that the caregiver is aware of how much marijuana the patient is prescribed or for how long the patient is supposed to use the drug, as mandated by § 8(a)(2). And it does not

cians that prescribe marijuana "in the course of a bona fide physician-patient relationship . . . ." MCL 333.26424(f). It further implies that this relationship must be ongoing by stressing that "nothing shall prevent a professional licensing board from sanctioning a physician for . . . otherwise violating the standard of care for evaluating medical conditions." This standard of care presumably includes follow-up visits with the patient. And § 6—as noted, the section that governs the issuance of registry identification cards—also implies its expectation of an ongoing physician-patient relationship. It states that "[i]f a . . . patient's certifying physician notifies the department in writing that the patient has ceased to suffer from a debilitating medical condition, the card shall become null and void upon notification by the department to the patient." MCL 333.26426(f).

ensure that the marijuana provided by the caregiver is actually being used by the patient for medical reasons, as mandated by § 8(a)(3).

In sum: a registry identification card is necessary, but not sufficient, to comply with the MMMA but clearly does not satisfy the § 8 requirements for a total defense to a charge of violation of this act.

### 1. SECTION 8(a)(1): THE BONA FIDE PHYSICIAN-PATIENT RELATIONSHIP

The first element of the affirmative defense of § 8(a) requires a defendant to present evidence that

> [a] physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.] [MCL 333.26428(a)(1).]

Here, the crux of defendant's § 8(a) defense lies within this first element. Again, defendant asserts, incorrectly, that his possession of state-issued medical marijuana patient and caregiver identification cards is enough to satisfy the physician's statement and "bona fide physician-patient relationship" required by the statute.[18] Certainly, possession of a card does not dem-

---

[18] We note that another panel of this Court held in an unpublished opinion per curiam that an individual's state registration as a user of medical marijuana is "prima facie evidence of the first and third elements" of the affirmative defense. *People v Kiel*, issued July 17, 2012 (Docket No. 301427), p 6. The panel did not explain its reasoning beyond this statement. We do not agree with this interpretation of the MMMA. In addition, defendant did not cite *Kiel* in his brief, nor is *Kiel* binding precedent, because it is unpublished. MCR 7.215(C)(1).

onstrate an ongoing relationship with a physician envisioned by the MMMA, where a doctor can prescribe a certain amount of marijuana for use over a specified period.[19]

When the people enacted the MMMA, the statute did not define "bona fide physician patient relationship," see *People v Redden*, 290 Mich App 65, 86; 799 NW2d 184 (2010), but the MMMA has since been amended to include in MCL 333.26423(a) such a definition. See 2012 PA 512. But, the amendment became effective April 1, 2013, and therefore, the new definition may not be applicable to cases, like this one, that arose before April 1, 2013. See *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 377; 781 NW2d 310 (2009) ("[t]he general rule is that an amended statute is given prospective application unless the Legislature expressly or impliedly identifies its intention to give the statute retrospective effect"). If the MMMA had been originally enacted by the Legislature, the amendment could be considered evidence of what the Legislature intended "bona fide physician-patient relationship" to mean when it enacted the MMMA. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). But the

---

[19] In effect, defendant seeks to link the first element of the § 8(a) defense to another part of the MMMA: section 6. Section 6 explains the procedure, documentation, and certification required to obtain a patient's or caregiver's card. MCL 333.26426. One of the requirements is a "written certification" from a physician, regarding the patient's condition. This certification, however, does not require the certifying physician to attest to an ongoing relationship with the patient, nor does it require him to detail how much marijuana the patient needs, and for how long the patient should use the drug. MCL 333.26423(m). If authentic, the written certification merely constitutes evidence that a physician did the following: (1) stated he completed a full assessment of the patient's medical history; (2) conducted an in-person medical evaluation; (3) observed a debilitating medical condition; and (4) concluded that the patient is likely to benefit from the medical use of marijuana. These actions do not satisfy the mandates of § 8(a)(1).

people of Michigan—not the Legislature—enacted the MMMA through a voter initiative.[20] Courts thus must "ascertain and give effect to the intent of the electorate, rather than the Legislature, as reflected in the language of the law itself." *Kolanek*, 491 Mich at 397. Accordingly, we must construe the MMMA's language with the words' "ordinary and plain meaning as would have been understood by the electorate." *Id.*[21]

Other cases provide definitions of "bona fide" in § (8)(a)(1)'s preamendment context. In *Redden*, another panel of this Court used a dictionary definition of "bona fide." *Redden*, 290 Mich App at 86. *Random House Webster's College Dictionary* (2d ed, 1997) defines "bona fide" as "1. made, done, etc., in good faith; without deception or fraud. 2. authentic; genuine; real." For further guidance, the Michigan Supreme Court indicated its approval of a definition of "bona fide physician-patient relationship" from a joint statement issued by the Michigan Board of Medicine and the Michigan Board of Osteopathic Medicine and Surgery:

---

[20] The Legislature clearly has the power to subsequently amend statutes that enact voter initiatives. Const 1963, art 2, § 9; *Advisory Opinion on Constitutionality of 1982 PA 47*, 418 Mich 49, 64; 340 NW2d 817 (1983). It is unclear, however, if such a subsequent legislative amendment can serve as evidence of the peoples' intent at the time they passed the initiative. Here, we follow the preamendment holdings of our Supreme Court quoted above, which tell us to consider the plain meaning of the MMMA's terms to discern the peoples' intent.

[21] However, upon close examination, it would appear that the definition adopted by the Legislature may be virtually the same as the definition understood by the electorate when they approved the initiative.

Defendant's claim would still fail under the added definition of "bona fide physician-patient relationship" now found at MCL 333.26423(a). He presented no evidence demonstrating that his patients' physicians had "a reasonable expectation that [the physician] will provide follow-up care to the patient to monitor the efficacy for the use of medical marihuana as a treatment of the patient's debilitating medical condition." MCL 333.26423(a)(3).

" 'a pre-existing and ongoing relationship with the patient as a treating physician.' " *Kolanek*, 491 Mich at 396 n 30 (citation omitted).

In light of these straightforward, common-sense definitions, defendant's argument becomes untenable. A registry identification card—even one verified by the state pursuant to the requirements of § 6—cannot demonstrate a "pre-existing" relationship between a physician and a patient, much less show "ongoing" contact between the two. Accordingly, mere possession of a patient's or caregiver's identification card does not satisfy the requirements of the first element of a § 8(a) defense. That the statute requires this outcome is in keeping with its medical purpose and protects the patients it is designed to serve. By requiring a bona fide physician-patient relationship for the § 8 defense, the MMMA prevents doctors who merely write prescriptions—such as the one featured in *Redden*[22]— from seeing a patient once, issuing a medical marijuana prescription, and never checking on whether that prescription actually treated the patient or served as a palliative.

Here, defendant presented evidence of a bona fide physician-patient relationship between him and his doctor. But he presented no evidence that his patients have bona fide physician-patient relationships with their certifying physicians. None of his patients testified. Nor was defendant able to provide the names of his patients' certifying physicians. While it is true that the MMMA does not explicitly impose a duty on patients to provide such basic medical information to their primary

_____

[22] The *Redden* physician practiced medicine in six states, spent 30 minutes with each of the *Redden* defendants, and seemingly examined the patients with the express purpose of helping them qualify to receive marijuana for medical purposes. See *Redden*, 290 Mich App at 70–71.

caregivers, the plain language of § 8 obviously requires such information for a patient or caregiver to effectively assert the § 8 defense in a court of law.

Accordingly, we hold that mere possession of a patient's or caregiver's identification card does not satisfy the first element of § 8(a)'s affirmative defense. Therefore, the trial court was correct to rule that defendant did not present valid evidence with respect to the first element of the § 8 affirmative defense.

### 2. SECTION 8(a)(2): NO MORE MARIJUANA THAN "REASONABLY NECESSARY"

The second element of the § 8 affirmative defense requires a defendant to present evidence that

> [t]he patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.] [MCL 333.26428(a)(2).]

This element thus involves two components: (1) possession, and (2) knowledge of what amount of marijuana is "reasonably necessary" for the patient's treatment.

Here, defendant argues that the volume limitations listed in § 4(b) should apply to § 8: namely, if a patient or caregiver possesses less than the amounts specified in § 4(b), that patient or caregiver possesses no more than a "reasonably necessary" amount of marijuana for medical treatment pursuant to § 8(a)(2).

This approach misstates the law and ignores the medical purposes of the MMMA. This Court has explicitly held that the amounts permitted under § 4 do not define what is "reasonably necessary" to establish the

§ 8 defense: "Indeed, if the intent of the statute were to have the amount in § 4 apply to § 8, the § 4 amount would have been reinserted into § 8(a)(2), instead of the language concerning an amount reasonably necessary to ensure . . . uninterrupted availability . . . ." *Redden,* 290 Mich App at 87, quoting MCL 333.26428(a)(2) (quotation marks omitted). In addition, our Supreme Court recently stressed that § 4 and § 8 are separate sections, intended to address different situations with different standards. *Kolanek,* 491 Mich at 397-399.[23] Further, importing § 4(b)'s volume limitations to § 8(a)(2) ignores the treatment-oriented nature of the act and § 8(a)'s specific medical requirements. Those requirements are intended for a patient or caregiver that is intimately aware of exactly how much marijuana is required to treat a patient's condition, which he learns from a doctor with whom the patient has an ongoing relationship.

Here, defendant lacks the requisite knowledge of how much marijuana is required to treat his patients' conditions—and even his own condition. He presented no evidence regarding how much marijuana he required to treat his pain and how often it should be treated. And he testified that he did not know how much marijuana his patients required to treat their conditions. Defendant thus failed to satisfy the second element of the § 8 affirmative defense. Accordingly, again the trial court properly held that defendant did not create a question of fact on this issue.

### 3. SECTION 8(a)(3): ACTUAL MEDICAL USE OF MARIJUANA

The third element of the § 8 affirmative defense requires a defendant to present evidence that

---

[23] See also *Bylsma,* 493 Mich at 28, and n 10 of this opinion.

[t]he patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a)(3).]

The trial court observed at the evidentiary hearing that defendant needed to satisfy § 8 (a)(3), but did not make a finding regarding whether he did so. Therefore, we need not address whether defendant satisfied this element through his testimony.[24]

Were the trial court to address this element of § 8, it appears that a letter from a patient's physician to the caregiver, which details: (1) a bona fide physician-patient relationship, (2) the patient's medical condition, (3) how much marijuana is needed to alleviate the condition, and (4) for how long the patient should take the drug, could serve as evidence that the marijuana supplied by the caregiver is actually used for medical purposes under § 8(a)(3).

Defendant's argument concerning § 8(a)(3) does not end with his testimony, however. Once again, defendant unconvincingly suggests that mere possession of state-issued registry identification cards is sufficient evidence to establish this element. Possession of a registry identification card indicates that the holder has gone through the requisite steps in § 6 required to obtain a card. It does not indicate that any marijuana possessed or manufactured by an individual is *actually* being used to treat or alleviate a debilitating medical condition or

---

[24] In any event, even if defendant had satisfied the requirements of § 8(a)(3), the case would not be dismissed under § 8, nor would he be allowed to present the defense at trial—he failed to present a question of fact with regard to § 8(a)(1) and (2).

its symptoms. In other words, prior state issuance of a registry identification card does not guarantee that the holder's subsequent behavior will comply with the MMMA. Defendant's theory is akin to stating that possession of a Michigan driver's license establishes that the holder of the license always obeys state traffic laws.

### V. CONCLUSION

Because (1) defendant possessed more marijuana than permitted under § 4(b), and (2) the prosecution presented evidence to rebut the medical-use presumption under § 4(d), defendant is not entitled to immunity from prosecution under § 4 of the MMMA. Further, because defendant did not present evidence demonstrating the first two elements of the § 8 defense, he was not entitled to have the case dismissed under that section, nor was he entitled to present the § 8 defense at trial. We therefore hold that the trial court did not abuse its discretion.

Affirmed.

SAWYER, J., concurred with SAAD, P.J.

JANSEN, J. (*concurring in the result*). I concur in the result only.