# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 17, 2017

Plaintiff-Appellee,

v

No. 332391
Oakland Circuit Court
LC No. 2012-240981-FH

RICHARD LEE HARTWICK,

Defendant-Appellant.

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of the delivery or manufacture of 5 to 45 kilograms of marijuana, MCL 333.7401(2)(d)(*ii*), and the possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*). The trial court sentenced him, as a fourth habitual offender, MCL 769.12, to 2 to 40 years in prison for the delivery or manufacture of 5 to 45 kilograms of marijuana conviction, and 2 to 15 years in prison for the possession with intent to deliver marijuana conviction. We affirm.

This case arises out of an incident on September 27, 2011, in which two police officers went to defendant's house in Pontiac to investigate a tip that someone was distributing marijuana from that location. The officers met defendant outside of the house, and one of the officers, Detective Ferguson, asked him if there was marijuana inside. Defendant replied that there was and that he was growing marijuana in compliance with the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. Detective Ferguson asked if could see the marijuana, and defendant let him enter the house. The detectives and defendant went into a back bedroom that was a grow room for the marijuana. They found many marijuana plants in that room and additional marijuana and drug paraphernalia in other parts of the house. The detectives counted the marijuana plants, determined that defendant was over the amount allowed under the MMMA, and seized the evidence. Defendant was later arrested and charged with the crimes of which he is now convicted.

This case has a lengthy procedural history. Before trial, defendant moved for dismissal of the charges under § 4 of the MMMA, MCL 333.26424, as well as § 8 of the MMMA, MCL 333.26428, and, alternatively, sought to assert the § 8 affirmative defense. The trial court held that defendant was not entitled to § 4 immunity. It also denied defendant's request for dismissal

under § 8 and ruled that he could not present the § 8 defense at trial because he had failed to prove the elements for the affirmative defense.

On October 11, 2012, we denied defendant's delayed application for leave to appeal. *People v Hartwick*, unpublished order of the Court of Appeals, entered October 11, 2012 (Docket No. 312308). On April 1, 2013, the Michigan Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted. *People v Hartwick*, 493 Mich 950; 828 NW2d 48 (2013) (*Hartwick I*). On November 19, 2013, we affirmed the trial court's ruling in a published opinion, holding that defendant was precluded from asserting immunity from prosecution under § 4 because he "failed to introduce evidence of (1) some of his patients' medical conditions, (2) the amount of marijuana they reasonably required for treatment and how long the treatment should continue, and (3) the identity of their physicians." *People v Hartwick*, 303 Mich App 247, 250, 260; 842 NW2d 545 (2013) (*Hartwick II*). We further held that defendant was not entitled to assert the § 8 defense because he did not present evidence that his patients had bona fide physician-patient relationships with their certifying physicians and that he knew the amount of marijuana needed to treat the conditions of his patients. *Id*. at 266-268. We rejected defendant's theory that the possession of a registry identification card alone was sufficient to meet the standards in the statute for a complete defense. *Id*. at 262, 269-270.

On July 27, 2015, after granting leave to appeal, the Michigan Supreme Court affirmed in part and reversed in part the judgment of this Court and remanded the case to the trial court for an evidentiary hearing regarding defendant's entitlement to immunity pursuant to MMMA § 4. *People v Hartwick*, 498 Mich 192, 239, 244-245; 870 NW2d 37 (2015) (*Hartwick III*). The Supreme Court held that the trial court erred in failing to make factual findings regarding the number of marijuana plants in defendant's possession and findings regarding the other elements of defendant's § 4 immunity claim. *Id*. at 239. Further, the Court found error in the trial court's analysis of the fourth element relating to the medical use of marijuana. *Id*. at 238. It noted that a § 4 analysis should focus on the defendant's conduct. *Id*. Finally, the Supreme Court agreed with our Court that defendant failed to present prima facie evidence of the elements of § 8(a) to assert a defense under the MMMA. *Id*. at 239.

On remand, the trial court conducted a § 4 hearing and concluded that defendant failed to prove by a preponderance of the evidence at least two of the four elements necessary to assert an immunity claim. It found that defendant did not show he was in possession of a patient registry identification card at the time the police searched his house. It also found that defendant had more than the statutorily allowable amount of marijuana plants in his possession at that time.

The trial court also conducted a hearing on defendant's motion to suppress the evidence seized from his house as the fruit of an illegal search. He claimed that he believed the officers had a warrant to search and that he never consented to the search of his residence. The trial court found otherwise and denied the motion to suppress. It concluded that the prosecution proved by a preponderance of the evidence that the search was conducted with defendant's consent.

At trial, there was again conflicting evidence regarding several issues concerned with the search. There was evidence that the officers discovered 78 marijuana plants in an unlocked room of the house. However, defense witnesses testified that defendant possessed either 70 or 72

plants and that the room in which they were stored was kept shut and locked. Among the items seized was defendant's cell phone. Detective Robert Ludd was qualified as an expert in street level narcotics trafficking and opined that the text messages from the phone indicated that defendant possessed the marijuana with the intent to deliver it rather than use it for personal consumption. At the conclusion of the trial, the jury found defendant guilty of the delivery or manufacture of 5 to 45 kilograms of marijuana and possession with intent to deliver marijuana. Following his sentencing, defendant filed the instant appeal.

## I. IMMUNITY UNDER THE MMMA

Defendant argues that the trial court erred in dismissing his claim of immunity under § 4 of the MMMA. We disagree.

We review a trial court's decision on a motion to dismiss criminal charges for an abuse of discretion, which exists when a decision "falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). A trial court's factual findings regarding § 4 immunity under the MMMA are reviewed under the clearly erroneous standard, and questions of law surrounding the § 4 immunity determination are reviewed de novo. *Hartwick III*, 498 Mich at 201. "A ruling is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (citation and quotation marks omitted).

While marijuana remains illegal in Michigan, the MMMA allows the medical use of marijuana by a limited class of individuals. Section 4 of the MMMA grants broad immunity from criminal prosecution and other penalties to qualified patients and caregivers. MCL 333.26424. Our Supreme Court recently addressed this case and set forth the appropriate test for establishing immunity under the MMMA, stating that defendant must prove by a preponderance of the evidence that he:

> (1) possessed a valid registry identification card for himself as a qualifying patient and for each of the five other connected registered qualifying patients,

> (2) possessed no more than 72 marijuana plants and 15 ounces of usable marijuana,

> (3) kept the marijuana plants in an enclosed, locked facility, and

> (4) was engaged in the medical use of marijuana. [*Hartwick III*, 498 Mich at 237-238.]

Further, the Court held that defendant was entitled to a presumption of the medical use of marijuana if he demonstrated by a preponderance of the evidence that he possessed:

> (1) a valid registry identification card for himself as a patient and for each of the five other registered qualifying patients to whom he is connected under the MMMA, and

(2) no more than 72 marijuana plants and 15 ounces of usable marijuana. [*Id.* at 238.]

The prosecution could then rebut this presumption in accordance with § 4(d)(2). *Id*. The fact-finding required to determine whether § 4 is applicable to the facts of a certain case is a question for the trial court's consideration and ultimate determination. *People v Jones*, 301 Mich App 566, 577; 837 NW2d 7 (2013).

Following a three-day hearing, the trial court issued an opinion holding that defendant was not entitled to immunity under § 4 of the MMMA. In its opinion, the trial court found that defendant established by a preponderance of the evidence that he possessed five registry identification cards as a caregiver for his five patients at the time of the search. However, the trial court found that defendant failed to show that he was a qualified patient. The trial court found that defendant's application for the patient registry card was insufficient to establish that he possessed a valid card. It stated that defendant failed to show that his application was actually submitted or had been submitted by a particular date and that he had never made an effort to obtain verification from the state of his valid registry status.

According to the record, defendant possessed a valid registry identification card for himself as a qualifying patient and for each of the five registered qualifying patients at the time of the search. At the hearing on July 18, 2012, the prosecution stipulated that defendant held a valid registry identification card as a patient for medical marijuana purposes. However, the prosecution subsequently argued that its stipulation was for purposes of the § 8 defense alone. The record indicates that the prosecution's stipulation to the validity of defendant's registry card extended to the § 4 immunity issue. Both defense counsel and the prosecution presented arguments relating to that issue at the hearing, and the trial court made a determination on defendant's request for immunity along with its ruling regarding the affirmative defense. Accordingly, there was a clear stipulation that defendant possessed a valid card as a medical marijuana patient. With such a stipulation, there was no requirement for defendant to secure a certified copy of the registration documents or some other more official document as the trial court indicated. Given these facts, the trial court erred in its finding that defendant did not meet the first element of a § 4 immunity claim.

Next, the trial court found that defendant failed to meet the second element of a § 4 immunity claim. Under the MMMA, defendant, as the caregiver, was allowed to have 12 plants for each patient under his care and another 12 for himself as a patient. The trial court held that the credible evidence showed "that there were at least seventy-six plants in the home." The trial court found that both Detective Doty and Detective Ferguson each counted a total of 78 plants. It also found that Detective Doty's testimony was credible and that defendant's testimony was inconsistent. It noted that the forensic lab report indicated that a total of 76 plants were submitted for testing. Thus, the trial court concluded that at most defendant was allowed to possess 72 marijuana plants, and defendant failed to establish that he was within the limit imposed under the statute.

Here, there was conflicting evidence regarding the number of marijuana plants found at the house. Detective Doty testified that he and Detective Ferguson each counted the marijuana plants, and there were 78 plants at the house. The plants were placed in a bag, and the detective

wrote the number of plants on the bag. He stated that each of the plants had a root system. Defendant testified that he was growing about 60 or 61 marijuana plants in the sunroom. Another room had two marijuana plants. He also said there were no more than 64 plants in total. Defendant was asked, however, about his previous testimony that there were 71 plants in Styrofoam cups.

The trial court is afforded deference in matters of credibility. *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). After hearing from the witnesses, the court found that Detective Doty was a more credible witness. In addition, there was corroborating evidence that the forensic lab report showed that more than 72 plants arrived for testing. In light of the evidence and giving deference to the trial court's determinations of credibility, it cannot be said that the trial court erred in finding that defendant possessed more than the statutorily allotted number of marijuana plants when the search was conducted. Because defendant failed to establish this element of a § 4 immunity claim, it was not an abuse of discretion for the trial court to deny defendant's motion to dismiss the case on the basis of immunity under the MMMA. Generally, the first three elements of immunity under the MMMA are all-or-nothing propositions. *Hartwick III*, 498 Mich at 218. Therefore, further analysis of the other elements is unnecessary.

## II. SEARCH AND SEIZURE

Defendant argues that his Fourth Amendment rights were violated when the police searched his house without a warrant or voluntary consent. We disagree.

We review de novo a trial court's ultimate decision on a motion to suppress. *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). We review for clear error a trial court's findings of fact made during the suppression hearing. *Id*. "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (citation and quotation marks omitted).

The United States and Michigan Constitutions both guarantee every person the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. A warrantless search is unreasonable per se. *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005). However, voluntary consent is an exception to the warrant requirement. *Id*. The consent exception permits a search and seizure if the consent is unequivocal, specific, and freely and intelligently given. *Lavigne v Forshee*, 307 Mich App 530, 538; 861 NW2d 635 (2014). "Whether consent to search is freely and voluntarily given presents a question of fact that must be determined on the basis of the totality of the circumstances; the presence of coercion or duress will militate against a finding of voluntariness." *Id*.

On the basis of the totality of the circumstances, the trial court did not clearly err in finding that defendant voluntarily consented to the search of his house. Detective Doty testified that he and Detective Ferguson responded to a complaint about marijuana at a house in Pontiac on September 27, 2011. The officers had not obtained a warrant, believing it was more appropriate to approach the homeowner since it was a possible medical marijuana situation. Instead, they conducted a "knock and talk" at the house. Detective Doty heard Detective Ferguson explain to defendant the reason for the police visit and ask defendant if he was a

medical marijuana cardholder. Defendant responded that he was a medical marijuana caregiver and had marijuana plants inside the house. The officers asked defendant if they could inspect the marijuana grow inside the house and he "welcomed [them] in." Detective Doty testified that Detective Ferguson did not tell defendant that they had a warrant or hand defendant a piece of paper. The detectives and defendant entered the side door of the house. Detective Doty stated that defendant was very cooperative with their investigation. Detective Doty recounted that he could see the grow lights when he was standing by the front door. Defendant took the officers to the grow room. Detective Doty saw marijuana plants in that room and branches of marijuana drying in another room. Detective Doty testified that they counted the plants, realized defendant was over the legal limit allowed under the MMMA, and seized the plants and other evidence.

On cross-examination Detective Doty testified that there were no pictures taken at the house and he had no notes on this case. However, he reviewed the police report that Detective Ferguson wrote and had personal recollection of things concerning this case. He testified that Detective Ferguson was no longer with the sheriff's department and that he did not know the reason for his absence. Detective Doty noted that he had originally stated they entered the front door of the house but later recalled it was the side door. Detective Doty was questioned regarding a case approximately two years ago where he was the affiant on the search warrant, a mistake was found regarding the search, and the case was dismissed. Detective Doty testified that this was the first time in his almost 20 years of police work that such a mistake had occurred. There was a letter admitted as a defense exhibit from the prosecutor's office indicating concern over Detective Ferguson's truthfulness and explaining that some of the cases on which he worked or charges in those cases had been dismissed.

Defendant testified that it was afternoon and he was standing in his yard when two officers pulled up in a vehicle. Detective Ferguson approached him and started a discussion with him. At some point, Detective Doty joined the conversation. Detective Ferguson asked defendant if he was growing marijuana, and defendant said he was. Detective Ferguson then asked for his identification cards. Defendant took out his wallet and showed the detective his cards. Detective Ferguson told defendant that they were going in to search his house. The officer handed defendant what defendant believed was a search warrant and went inside. Defendant did not look at or read the paper the detective gave him because he immediately followed the detective into the house. Defendant testified that Detective Ferguson did not ask if he could go inside the house and that defendant never gave him consent to search the house. However, in his motion to suppress defendant averred that the officer asked him if he could do a search of the house, and defendant answered, "[N]o." Defendant claimed that, once inside, Detective Ferguson took the paper back and the items from defendant's pockets and had defendant sit down. Detective Ferguson returned to get defendant because the grow room was locked. Defendant contended that the grow lights were not visible from outside of the room.

On cross-examination, defendant admitted he had never denied that he was growing marijuana. Rather, he thought that he was in compliance with the MMMA. It was noted that in his motion to suppress, defendant claimed that Detective Ferguson said "he was going in the fucking house" and that the officer would "break the fucking door down" if defendant did not let him in the house. At the hearing, defendant testified that the officer did not use curse words during their interactions. Defendant explained that he might have been under an adrenaline rush

when he was recounting the incident to his counsel. Defendant denied that there were text messages from his phone about drugs.

At the conclusion of the hearing, the trial court ruled that defendant had consented to the search and denied his motion to suppress the evidence. The trial court noted that it had been nearly five years since the search and seizure occurred. It found that both Detective Doty and defendant had some lapses in their memories of the events. However, the trial court found that Detective Doty was a more credible witness than defendant, whose testimony was inconsistent. It also found that defendant's belief that he was in compliance with the law supported Detective Doty's account that defendant allowed the detectives to search his home. The trial court stated that the timing of defendant's motion just before trial "lends to its lack of credibility." The trial court noted that there was a basis for concern that the other detective who was part of the knock and talk operation might have been untruthful in other cases. However, it found that Detective Doty was present during the search and was "very credible." Again, we give deference to the trial court "where a factual issue involves the credibility of the witnesses whose testimony is in conflict." *Farrow*, 461 Mich at 209. There was no error in the trial court's finding that Detective Doty's account of the interaction was more believable and that consent was obtained. Additionally, defendant's consistent assertion that he had marijuana and believed he was in compliance with the law is a circumstance that also supports a finding of consent. Given the evidence before it, there is no clear error in the trial court's finding that defendant gave consent to the search. Therefore, there was no violation of his Fourth Amendment right against an unreasonable search and seizure.

## III. CHAIN OF CUSTODY

Defendant contends that it was error for the trial court to admit Detective Doty's testimony regarding the number of marijuana plants found at defendant's house when there was no chain of custody established regarding the plants. We disagree.

To preserve an evidentiary issue for review, the party must object to the admission of the evidence at trial and specify the same ground for objection that it claims on appeal. *People v Douglas*, 496 Mich 557, 574; 852 NW2d 587 (2014). Defense counsel objected to the chain of custody of the marijuana in the mason jars, not the marijuana plants in the grow room. Therefore, this issue is not preserved for appeal. We review unpreserved evidentiary issues for plain error affecting the defendant's substantial rights, which requires a showing of prejudice, in other words that the error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999).

The authenticity of evidence must be established when admitting real evidence and does not require a perfect chain of custody. *People v White*, 208 Mich App 126, 130; 527 NW2d 34 (1994). Rather, "any deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility once the proffered evidence is shown to a reasonable degree of certainty to be what its proponent claims." *Id*. at 130-131.

The real marijuana plants were not introduced into evidence and, therefore, did not require proof of a chain of custody. Nevertheless, a chain of custody was established regarding the marijuana seized. Detective Doty testified that defendant told the police he was growing

marijuana in the house and showed them the grow room. Detective Doty counted and re-counted 78 plants during the search. He also explained that the plants were placed into large yard bags, and he labeled the bags with the number of plants inside. The plants were submitted to the crime lab for testing. Rachel Norgart, an expert in forensic chemistry, testified that she tested 20 of the plants that she received, and they all tested positive as marijuana. There was testimony that the plants were later destroyed for health and safety reasons. This testimony established that the plants found at defendant's house and tested at the lab were the same plants and that they were marijuana plants.

Any issue regarding the number of plants went to the credibility of witnesses, which is a matter for the jury to determine. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). Detective Doty testified that there were 78 marijuana plants found. Defense witnesses testified that there were 70 or 72 plants at the house on the day of the search. Defendant improperly argues that the dispute over the number of plants indicated that he did not possess more than the amount permitted under § 4 of the MMMA. The trial court previously determined that defendant was not entitled to immunity under that statute. Thus, the only relevant inquiry relating to the charges was whether defendant was manufacturing 5 to 45 kilograms of marijuana or between 20 and 200 marijuana plants. See MCL 333.7401(2)(d)(*ii*). Either the low number of 70 plants or the high number of 78 plants was sufficient to establish that defendant was in possession of an illegal amount of marijuana. It was the jury's task to weigh the evidence and determine whether defendant possessed the requisite amount of marijuana to meet the charged crimes. Accordingly, there was no error in admitting Detective Doty's testimony about the number of marijuana plants recovered from defendant's house. Defendant was not denied his constitutional right to due process of law.

## IV. QUALIFICATION OF AN EXPERT WITNESS

Defendant challenges the admissibility of Detective Ludd's testimony on the basis that the expert witness was not qualified to testify regarding narcotics dealings pursuant to MRE 702. Defendant has waived review of this issue. At trial, the prosecution moved to have Detective Robert Ludd qualified as an expert in the field of street level narcotics trafficking. Defense counsel stated he had "[n]o objection" to Detective Ludd's qualification as an expert witness. A party waives an issue if the party intentionally relinquishes or abandons a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Therefore, defense counsel's approval of the qualification extinguished any error and precludes appellate review of this issue. *Id*.

Even if this issue had not been waived, there is no error requiring reversal. The testimony involved how the evidence found in defendant's house and on his cell phone was generally indicative of weighing and selling marijuana. Detective Ludd was qualified to testify because of his specific training and experience in the area of narcotics and his prior qualification as an expert in street level narcotics trafficking.

## V. OTHER ACTS EVIDENCE

Defendant asserts that the prosecution improperly introduced text messages from defendant's cell phone indicating that he was dealing in controlled substances other than

marijuana. He claims that this evidence constituted inadmissible other acts evidence under MRE 404(b) and was unduly prejudicial. We disagree.

Defense counsel did not preserve this issue by objecting to the admission of the evidence regarding other controlled substances. *Douglas*, 496 Mich at 574. We review unpreserved evidentiary issues for plain error affecting the defendant's substantial rights, which requires a showing of prejudice, in other words that the error affected the outcome of the proceedings. *Carines*, 460 Mich at 763-764, 774. We also review de novo the question of whether a defendant was deprived of a right without due process of law. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

Defendant argues that the trial court improperly allowed Detective Ludd to testify about statements made by defendant in the three months prior to his arrest regarding his dealings in controlled substances other than marijuana. The prosecution introduced as an exhibit the entire record containing over 3,000 text messages from defendant's cell phone from June 24, 2011, to September 28, 2011. It then questioned the expert witness on certain incoming and outgoing calls referring to drug transactions and payments. Some of those text messages referred to other controlled substances such as Vicodin, Fentanyl, and Norco.

According to defendant, this evidence was improperly admitted because it constituted other acts evidence under MRE 404(b). Defendant's argument lacks merit. MRE 404(b) provides that, unless a delineated exception applies, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b) applies only to prior acts, not to prior statements. *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989). A text message is considered a statement.[1]

Here, the statements were admitted at trial as admissions by a party opponent under MRE 801(d)(2)(A). Such a statement is excluded from the definition of hearsay if it is "offered against a party and is . . . his own statement . . . ." *People v Goddard*, 429 Mich 505, 523; 418 NW2d 881 (1988) (RILEY, J., concurring). The appropriate inquiry then is whether the admitted statement is relevant. *Rushlow*, 179 Mich App at 176. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Defendant's statements regarding controlled substances other than marijuana were relevant. Specifically, they showed defendant's intent to deliver drugs. Further, the statements were not unfairly prejudicial. Evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). "The pivotal consideration is whether the probative value of the

---

[1] See *People v Shigwadja*, unpublished opinion per curiam of the Court of Appeals, issued January 19, 2017 (Docket No. 329471) (holding that the defendant's threat "was a statement in a text message, not an other act"). Although unpublished decisions are not precedentially binding authority, MCR 7.215(C)(1), they may be persuasive. See *People v Christopher Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004).

testimony is substantially outweighed by unfair prejudice." *Id.* The text messages were highly probative of an element of the crime charged. The prosecution was required to prove that (1) defendant knowingly possessed a controlled substance, (2) defendant intended to deliver the controlled substance, (3) the substance in possession was marijuana and defendant knew that it was, and (4) the marijuana was in a mixture that weighed less than five kilograms. MCL 333.7401(2)(d)(*iii*); see also *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998). The text messages at issue established defendant's intent to deliver the controlled substances and not to use them for personal consumption. They did not insert extraneous considerations such as bias, anger, sympathy, or shock into the merits of the case. See *Fisher*, 449 Mich at 452-453, citing *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984). For these reasons, there was no error requiring reversal in the admission of the challenged statements and defendant was not deprived of his right to due process.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that his trial counsel was ineffective for failing to object to the trial court's qualification of an expert witness and to the prosecution's introduction of other acts evidence. We disagree.

Generally, "[a] claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id.* However, because defendant failed to move for a new trial or an evidentiary hearing below, we review this unpreserved claim of ineffective assistance of counsel for errors apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Douglas*, 496 Mich at 592 (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Decisions regarding what evidence to present, how to question witnesses, and whether to raise objections to procedures, evidence, or argument are presumed to be matters of trial strategy, and this Court will not second-guess counsel's strategic decisions nor will it analyze counsel's competence with the benefit of hindsight. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008); *People v Unger*, 278 Mich App 210, 242-243, 253; 749 NW2d 272 (2008).

First, defense counsel's failure to object to and actual affirmation of Detective Ludd as an expert witness in street level narcotics trafficking does not constitute the ineffective assistance of counsel. The record establishes that Detective Ludd's training and experience were sufficient to satisfy the requirements for an expert witness pursuant to MRE 702. In addition, his opinion testimony was offered to assist the jury in understanding the evidence and determining a fact in issue. Defense counsel is not required to make a meritless or futile objection. *People v Putnam*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Therefore, defense counsel was not ineffective by failing to challenge this decision.

Second, defense counsel's failure to object to the introduction of defendant's text messages does not constitute the ineffective assistance of counsel. As previously determined, the text messages were introduced as statements under MRE 801(d)(2)(A), not as other acts evidence pursuant to MRE 404(b), and their introduction did not deprive defendant of a fair trial. An objection to the admission of the statements as impermissible other acts evidence would have been futile. Thus, defense counsel's failure to raise a meritless objection to the introduction of the text messages did not deny defendant the effective assistance of counsel. See *id*.

Affirmed.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola