PEOPLE v WHITE

Docket No. 154378. Submitted July 8, 1994, at Lansing. Decided December 19, 1994, at 9:40 A.M.

Prentis M. White was convicted by a jury in the Washtenaw Circuit Court, Patrick J. Conlin, J., of possession of less than twenty-five grams of cocaine. He then pleaded guilty of being a second-time controlled substance offender and was sentenced to two to eight years' imprisonment. He appealed, claiming error both in the admission of the cocaine as evidence at the trial and in the sentence.

The Court of Appeals held:

1. A sufficient foundation was laid for the admission of the cocaine. A perfect chain of custody is not required for the admission of cocaine and other relatively indistinguishable items of real evidence. Any deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility once the proffered evidence is shown to a reasonable degree of certainty to be what its proponent claims. The admission of relatively indistinguishable evidence requires a chain of custody only sufficiently complete to render it reasonably probable that the original item has neither been exchanged with another nor been contaminated or tampered with.

2. The trial court did not err in denying the defendant's motion to quash because of prearraignment delay. The defendant did not show substantial prejudice to his right to a fair trial or intent by the prosecutor to gain a tactical advantage.

3. The sentence does not violate the principle of proportionality. However, the case must be remanded to the trial court for an explanation of its sentence under the procedures set forth in *People v Triplett*, 432 Mich 568 (1989).

Affirmed and remanded.

1. EVIDENCE — ADMISSIBILITY — INDISTINGUISHABLE ITEMS OF REAL EVIDENCE — CHAIN OF CUSTODY.

A perfect chain of custody is not required for the admission of

REFERENCES
Am Jur 2d, Criminal Law §§ 654, 655, 663, 856, 863, 868, 873; Evidence §§ 946, 947; Indictments and Informations §§ 13, 284.
Delay between filing of complaint or other charge and arrest of accused as violation of right to speedy trial. 85 ALR2d 980.

cocaine and other relatively indistinguishable items of real evidence; such evidence may be admitted where the absence of a mistaken exchange, contamination, or tampering has been established to a reasonable degree of probability or certainty; once a proper foundation has been established, any deficiencies in the chain of custody go to the weight afforded to the evidence, rather than its admissibility.

2. Criminal Law — Preindictment and Prearrest Delay — Dismissal.

Dismissal of criminal charges is warranted as a result of unjustified preindictment or prearrest delay where the defendant shows substantial prejudice to the defendant's right to a fair trial and intent by the prosecution to gain a tactical advantage.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Brian L. Mackie,* Prosecuting Attorney, and *David A. King,* First Assistant Prosecuting Attorney, for the people.

*Michael J. Steinberg,* for the defendant on appeal.

Before: Griffin, P.J., and MacKenzie and F. X. O'Brien,* JJ.

Griffin, P.J. Following a jury trial, defendant was convicted of one count of possession of less than twenty-five grams of cocaine, MCL 333.7403(2)(a)(v); MSA 14.15(7403)(2)(a)(v). He was sentenced as a second controlled substances offender, MCL 333.7413(2); MSA 14.15(7413)(2), to two to eight years' imprisonment. Defendant appeals as of right. We affirm defendant's conviction and hold that a perfect chain of custody is not required for the admission of cocaine and other relatively indistinguishable items of real evidence.

I

On October 10, 1991, Ypsilanti police officer

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Eugene Rush spotted defendant while eating in a local restaurant. Officer Rush immediately recognized defendant as the subject of three outstanding warrants for his arrest. As Officer Rush and another officer approached defendant to effectuate an arrest, defendant stated, "[W]hy are you coming close to me?" Defendant then put his left hand in his pants pocket and attempted to flee from the restaurant.

Before defendant reached the front door of the restaurant, Officer Rush grabbed defendant in the alcove. As Officer Rush struggled to restrain defendant from leaving the restaurant, he was joined by several other officers who arrived at the scene. After the officers succeeded in handcuffing defendant, a clear cellophane wrapper was taken from defendant's clenched left hand by Officer Joseph Braunschneider. The wrapper contained approximately four small rocks of suspected crack cocaine. Officer Rush, who was given custody of the evidence at the police station by Officer Braunschneider, placed the evidence in an evidence envelope, which he sealed, stapled, and placed in the evidence room safe.

At trial, the focus of the defense strategy was to attack the chain of custody of the seized contraband after it was placed in the safe by Officer Rush. Ypsilanti police officer Malcolm Winn testified that he transported the sealed evidence envelope from the police station to the Michigan State Police Crime Laboratory evidence locker on October 14, 1991. Further, crime lab scientist Jurgen Switalski testified that he removed the sealed envelope from the locked evidence locker and conducted two tests for the presence of cocaine on the following day.

However, Officer Winn admitted on cross-examination that he personally did not witness the

removal of the evidence from the safe at the police station. Instead, he testified that he received the evidence from Sergeant Yek, the officer in charge of the property room, when he arrived to transport the evidence. Sergeant Yek did not testify at trial.

Following the prosecutor's motion for the admission of the cocaine, defendant objected on the basis that there was a break in the chain of custody. Defendant argued that the evidence was inadmissible because there was no testimony concerning the transfer of the cocaine from the evidence safe. The trial court overruled defendant's objection after concluding that a break in the chain of custody goes to the weight of the evidence rather than its admissibility. Further, the trial court ruled that it was "arguable" whether, in fact, there was a break in the chain.

II

Defendant first argues on appeal that the trial court erred in admitting the cocaine into evidence because there was a vital link missing in the chain of custody. Specifically, defendant contends that unlike other types of real evidence, a strict chain of custody is required for the admissibility of relatively indistinguishable or fungible items that have been examined or tested by an expert. We disagree.

The foundation requirements for the admission of real evidence were summarized by Professor McCormick in his authoritative treatise on evidence:

Again, demonstrative evidence may be classified as to whether the item offered did or did not play an actual and direct part in the incident or transaction giving rise to the trial. Objects offered as

having played such a direct role, e.g., the alleged weapon in a murder prosecution, are commonly called "real" or "original" evidence and are to be distinguished from evidence which played no such part but is offered for illustrative or other purposes. It will be readily apparent that when real evidence is offered an adequate foundation for admission will require testimony first that the object offered is the object which was involved in the incident, and further that the condition of the object is substantially unchanged. If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the "chain of custody" of the item with sufficient completeness to render it reasonably probable that the original item has neither been exchanged with another nor been contaminated or tampered with. [2 McCormick, Evidence (4th ed), § 212, pp 7-8.]

Consistent with these requirements, the majority of our panels have concluded that the admission of real evidence does not require a perfect chain of custody. See, e.g., *People v Prast (On Rehearing)*, 114 Mich App 469, 490; 319 NW2d 627 (1982); *People v Stevens*, 88 Mich App 421, 424; 276 NW2d 910 (1979); *People v Kremko*, 52 Mich App 565, 573, 218 NW2d 112 (1974). But see *People v Curry*, 39 Mich App 412, 417-418; 197 NW2d 837 (1972). In this line of cases, we held that any deficiency in the chain of custody goes to the

weight of the evidence rather than its admissibility once the proffered evidence is shown to a reasonable degree of certainty to be what its proponent claims. See, e.g., *People v Jennings,* 118 Mich App 318, 324; 324 NW2d 625 (1982); *Stevens, supra; Kremko, supra.*

On appeal, defendant attempts to distinguish these cases because they dealt with fairly unique or readily identifiable evidence. Defendant asserts that because cocaine is a relatively indistinguishable substance, a strict chain of custody is necessary to avoid "a mistaken exchange, tampering and contamination." In contrast, the people argue that a "prosecutor must merely lay a foundation identifying articles as what they are purported to be and showing that they are connected with the crime or the accused."

In resolving this question, we find dispositive the foundation requirements for the admission of real evidence summarized in Professor McCormick's treatise on evidence.[1] According to Professor Mc-Cormick, the admission of relatively indistinguishable evidence requires a chain of custody only sufficiently complete to "render it reasonably probable that the original item has neither been exchanged with another nor been contaminated or tampered with."[2]

We find further support for this position among the circuits of the United States Court of Appeals.[3] See, e.g., *United States v Lott,* 854 F2d 244 (CA 7,

---

[1] We recognize that in *People v Hintz,* 62 Mich App 196, 203; 233 NW2d 228 (1975), a panel of this Court upheld the lower court's admission of the people's evidence of cocaine despite the defendant's contention of a break in the chain of custody. However, in *Hintz,* unlike in the present case, our decision was based on our belief that there were no deficiencies in the chain of custody.

[2] McCormick, *supra,* § 212, p 8.

[3] MRE 901, like its federal counterpart, FRE 901, governs the foundation or authentication requirements for the admission of real evidence. Because the relevant portions of MRE 901 are identical to

1988); *United States v Mora,* 845 F2d 233, 237 (CA 10, 1988); *United States v Jones,* 687 F2d 1265 (CA 8, 1982). Representative of these views, is the Seventh Circuit Court of Appeals decision in *Lott, supra.* There, the Seventh Circuit upheld the lower court's decision to admit the government's liquid phencyclidine (PCP) evidence despite the government's failure to show a complete chain of custody:

> In any case, the government need not prove a perfect chain of custody for evidence to be admitted at trial; gaps in the chain normally go to the weight of the evidence rather than its admissibility. *United States v Jefferson,* 714 F2d 689, 696 (CA 7, 1983); *United States v Lampson,* 627 F2d 62, 65 (CA 7, 1980). Moreover, the government need only show that it took reasonable precautions to preserve the original condition of the evidence, it does not have to exclude all possibilities of tampering with the evidence. [*United States v Aviles,* 623 F2d 1192, 1198 (CA 7, 1980)]. In addition, a presumption of regularity exists with respect to official acts of public officers and, absent any evidence to the contrary, the court presumes that their official duties have been discharged properly. *Id.*
>
> The district court was satisfied that the government established a sufficient foundation for each of the above items for physical evidence. On this record, we cannot conclude that it abused its discretion in reaching that conclusion. In our view, the chains of custody for the exhibits were substantially complete and the trial court could properly conclude, taking into account the lack of evidence of any government wrongdoing along with the presumption that the government's agents properly performed their duties, that the evidence was admissible. [*Lott, supra* at 250-251.]

In light of these principles, we hold that a

the corresponding provisions of FRE 901, the circuits of the United States Court of Appeals provide substantial guidance on this point.

perfect chain of custody is not required for the admission of cocaine and other relatively indistinguishable items of real evidence. Rather, such evidence may be admitted where the absence of a mistaken exchange, contamination, or tampering has been established to a reasonable degree of probability or certainty.

Although we recognize that a break or gap in the chain of custody may be relevant to this determination, nevertheless, it does not require automatic exclusion of the evidence. The threshold question remains whether an adequate foundation for admission of the evidence has been laid under all the facts and circumstances of each individual case. Once a proper foundation has been established, any deficiencies in the chain of custody go to the weight afforded to the evidence, rather than its admissibility.

After applying this standard in the present case, we conclude that a sufficient foundation was laid for the admission of the cocaine. First, we note that the chain of custody for the cocaine was substantially complete. Although there was no testimony concerning the transfer of the cocaine from the evidence room safe, it can be inferred reasonably from Officer Winn's testimony that Sergeant Yek removed the evidence envelope. Further, the testimony at trial established that reasonable precautions were taken to preserve the original condition of the evidence and prevent its misidentification.

The evidence was sealed in an evidence envelope and placed in a locked safe at the police station. An Ypsilanti Police Department property receipt along with a laboratory sheet were placed on the envelope identifying the evidence. Officer Winn received the sealed envelope from Sergeant Yek and transported it to a locked evidence locker at

the Michigan State Police Crime Laboratory. The sealed envelope was removed by crime lab scientist Jurgen Switalski, who wrote his signature and the complaint number on the envelope. Under these circumstances, the trial court did not abuse its discretion in admitting the evidence at trial.

III

Defendant further argues that the trial court erred in denying his motion to quash because he was denied his right to due process by an unexplained prearraignment delay of nearly four months. Defendant asserts that the delay caused him to suffer severe prejudice because it prevented an attorney from being appointed who could have investigated and secured exculpatory evidence from missing res gestae witnesses. This argument is without merit.

In a related factual context, the United States Supreme Court has recognized that the Due Process Clause plays a limited role in preventing unjustified preindictment or prearrest delay. *United States v Marion,* 404 US 307, 324-326; 92 S Ct 455; 30 L Ed 2d 468 (1971); *United States v Lovasco,* 431 US 783, 789; 97 S Ct 2044; 52 L Ed 2d 752 (1977); *United States v Brown,* 959 F2d 63, 65 (CA 6, 1992); *People v Nuss,* 405 Mich 437, 453; 276 NW2d 448 (1979). In determining whether dismissal is warranted by a delay, a defendant must show substantial prejudice to his right to a fair trial and intent by the prosecution to gain a tactical advantage. *Marion, supra* at 324; *United States v Lash,* 937 F2d 1077, 1088 (CA 6, 1991).

In this case, defendant has failed to meet either prong of the above test. Although defendant claims that the delay has prevented him from obtaining exculpatory information from missing res gestae

witnesses, he has failed to identify the witnesses or the substance of the information. Similarly, defendant has offered no evidence showing that the delay was intended to secure a tactical advantage on the part of the prosecution. Accordingly, the trial court did not err in denying defendant's motion to quash.

IV

Defendant's remaining arguments concern the validity of his sentence. Defendant first argues that his sentence violates the principle of proportionality. Just as with habitual offender sentences, the sentencing guidelines are not applicable to a defendant whose sentence was enhanced under the subsequent-offender provision of the controlled substances act, MCL 333.7413(2); MSA 14.15(7413) (2). *People v Williams,* 205 Mich App 229, 231-234; 517 NW2d 315 (1994). Nevertheless, we use the guidelines as a "starting point" in reviewing the proportionality of defendant's sentence. *Id.* at 234.

Under MCL 333.7413(2); MSA 14.15(7413)(2), a defendant "may be imprisoned for a term not more than twice the term otherwise authorized." Defendant was sentenced to a prison term of two to eight years. In comparison, the recommended guidelines' range for defendant's underlying conviction of possession of cocaine was zero to twelve months. Thus, defendant's minimum sentence was a twofold departure from the upper end of the guidelines' range. Given defendant's criminal history, his longstanding substance abuse problem, and the degree of departure from the guidelines' range, we conclude that defendant's sentence does not violate the principle of proportionality. *People v Milbourn,* 435 Mich 630, 635-636; 461 NW2d 1 (1990); *Williams, supra.*

However, because of the trial court's complete failure to articulate any reason for defendant's sentence, we remand for further articulation under the procedures set forth in *People v Triplett,* 432 Mich 568, 573; 442 NW2d 622 (1989). On remand, the trial court should address whether it mistakenly believed that, in imposing defendant's sentence, enhancement was mandatory under § 7413(2). See *People v Green,* 205 Mich App 342, 346-347; 517 NW2d 782 (1994).

Affirmed. However, we remand this case to the circuit court for an explanation of its sentence. We do not retain jurisdiction.