# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

AARON DESEAN FLAKE,

      Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No. 317325
Wayne Circuit Court
LC No. 13-000835-FC

Before: O'CONNELL, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by right his conviction by jury of arson of a dwelling, MCL 750.72.[1] The trial court sentenced defendant to 130 months to 240 months' imprisonment. We affirm.

This case arises from an incident that occurred in Detroit on November 17, 2012. On that evening, there was a fire in a Detroit home. After the fire was contained, a resident of the home was found dead inside. It was determined, however, that the victim died from three gunshots wounds incurred before the fire was started. The prosecution alleged that defendant, who was seen at the home on the night of the fire, perpetrated the murder and arson. Surveillance footage from a church across the street from the residence was downloaded and admitted at trial. The footage showed two individuals arriving at the home in a two-door vehicle before the fire and leaving the home after the fire was set. Defendant was ultimately convicted of arson, and now appeals.

Defendant first argues that he was denied a fair trial because of the admission of the surveillance video footage. Specifically, defendant asserts that the video was more prejudicial than probative, lacked the requisite chain of custody, and that testimony about the footage provided by Detroit Police Department Officer Lance Sullivan was improper. We disagree. The decision to admit evidence is reviewed for an abuse of discretion. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "A trial court abuses its discretion when its decision falls

---

[1] MCL 750.72 was amended by 2012 PA 531, which was signed December 27, 2012 and became effective on April 3, 2013. The charged conduct in this case occurred in November 2012.

outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (internal quotation marks and citation omitted).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Here, the video itself was relevant because it shows the crime occurring. However, MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "Evidence is unfairly prejudicial when there exists a danger that *marginally* probative evidence will be given undue or preemptive weight by the jury." *People v Kowalski*, 492 Mich 106, 137; 821 NW2d 14 (2012) (emphasis in original) (internal quotation marks and citation omitted). Here, the video cannot be characterized as "marginally probative." The evidence directly tends to prove that two individuals committed arson, the time they arrived and left the scene, and details about the vehicle in which they were traveling. These facts were all essential to the case.

Defendant also asserts that Officer Sullivan, a forensic video analyst, improperly testified regarding events in the surveillance video, which, according to defendant, constituted improper opinion testimony and invaded the fact-finding province of the jury. MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013), this Court considered whether a certified video forensic technician could comment on video evidence and determined the testimony was "properly admitted as lay opinion testimony under MRE 701." *Id.* at 48, 50. The Court noted that the technician's testimony was rationally based on his perception of the video and he was not required to be at the scene. *Id.* at 50-51. The Court also determined that the testimony provided a clearer understanding of facts in issue. *Id.* at 51-52. Finally, this Court held that the technician's testimony did not invade the province of the jury because he never identified the defendant in the video. *Id.* at 52-53.

Here, Sullivan's testimony was based on his perception of the video and rationally related to it as he consistently referenced the film and the timestamps of the video. See *id.* at 50-51; MRE 701(a). Sullivan's testimony also helped provide a clearer understanding of facts. MRE 701(b); see *Fomby*, 300 Mich App at 51-52. The video was black and white and may have been difficult for the jury to decipher because it was shot by an infrared camera. Further, there were timestamp discrepancies in the video that necessitated explanation. Timing was noted by the court below as "critical." Finally, as noted by the Court in *Fomby*, Sullivan never identified defendant on the footage. *Fomby*, 300 Mich App at 52-53. Rather, Sullivan only stated that he observed subjects or individuals moving about. For these reasons, it cannot be said that Sullivan's commentary was improper pursuant to MRE 701 or unfairly prejudicial pursuant to MRE 403. While defendant seems to be implying that the testimony could have misled the jury in some way, he does not challenge the accuracy of Sullivan's testimony. Moreover, the jury was free to view the surveillance video and make its own factual determinations.

Defendant also claims that the recording was improperly admitted because of defects in its chain of custody. Admission of evidence "does not require a perfect chain of custody." *People v White*, 208 Mich App 126, 130; 527 NW2d 34 (1994); see also *People v Herndon*, 246 Mich App 371, 405; 633 NW2d 376 (2001). Further, "once the proffered evidence is shown to a reasonable degree of certainty to be what its proponent claims," any "deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility." *White*, 208 Mich App at 130-131. Here, several officers testified regarding the collection of the surveillance video. The testimony established that the video file was secured from the church surveillance system and transported to a police computer, where it was further transferred to additional police employees. Although there is no clear testimony regarding who transferred the files onto a DVD, there is no real dispute that the video came from the church. Indeed, the pastor testified that he viewed a portion of the video and that it was consistent with the video captured by his surveillance system. There was also no evidence that the video was tampered with or otherwise contaminated. Therefore, the prosecution properly demonstrated the video was what it claimed to be—surveillance footage capturing the crime. The prosecution was not required to submit a perfect chain of custody and any defects between the recovery of the files and their presentation in court go to the weight and not admissibility of the evidence. *Id.*[2]

Defendant next argues that the prosecution's exercise of its peremptory challenges to dismiss two black women from sitting on the jury denied him a fair trial pursuant to *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). We disagree.

"A defendant's preserved[3] challenge to the prosecutor's use of a preemptory challenge on the basis that it violated the Equal Protection Clause is a mixed question of fact and law." *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014). The three parts of a *Batson* challenge are reviewed as follows: the first part is a mixed question of fact and law that is subject to both a clear error and de novo review, respectively; the second step is reviewed de novo; and the third step is reviewed for clear error. *People v Knight*, 473 Mich 324, 342-345; 701 NW2d 715 (2005). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013) (citation omitted).

"Under the Equal Protection clause of the Fourteenth Amendment, a party may not exercise a preemptory challenge to remove a prospective juror solely on the basis of the person's

---

[2] We also reject defendant's contention that that fact there may have been additional video viewed or downloaded at the church by the fire investigator alters the admissibility of the video. Defendant does not argue that some portion of the video would be exculpatory and there is no testimony from the pastor that additional video captured at the church would show a different series of events or identify a different perpetrator.

[3] Defendant timely challenged the prosecution's use of peremptory challenges pursuant to *Batson*, claiming that the prosecution showed a pattern of exclusion based on race, thus properly preserving this issue for review. *People v Knight*, 473 Mich 324, 346, 348; 701 NW2d 715 (2005).

race." *Knight*, 473 Mich at 335; see also *Batson*, 476 US at 89. Generally, the determination of the constitutional propriety of a preemptory challenge requires a three-part analysis. *Knight*, 473 Mich at 336. First, there must be a prima facie showing of discrimination based on race. *Id*. To establish a prima facie case based on race, defendant must show:

> (1) the defendant is a member of a cognizable racial group; (2) peremptory challenges are being exercised to exclude members of a certain racial group from the jury pool; and (3) the circumstances raise an inference that the exclusion was based on race. [*People v Bell*, 473 Mich 275, 282-283; 702 NW2d 128 (2005).]

Once a prima facie case has been made, "the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *Knight*, 473 Mich at 337. The trial court then determines "whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination." *Id*. at 337-338. Where the trial court makes a ruling on the third step, the first step requiring a prima facie showing of discrimination "becomes moot." *Id*. at 338. This three-step process is to be "meticulously followed," and our Supreme Court has strongly urged trial courts to clearly articulate their findings on the record. *Id*. at 339.

Here, defendant challenges the prosecution's use of preemptory challenges on jurors nine and twelve. During voir dire, the prosecution inquired whether juror nine would be able to convict defendant without scientific evidence linking defendant to the arson, and she responded that she would need scientific evidence to convict. However, she further stated that she could be fair. Juror twelve worked with the National Archive of Criminal Justice Data at the University of Michigan, which included research involving the Wayne County justice system. She stated, in response to questioning, that "the system is not perfect" and elaborated that "I just know the system itself does not work." However, she also stated she would not allow her beliefs or thoughts about the justice system to influence her decision. She stated she could be fair and take each case as it comes, irrespective of her job. The prosecution peremptorily excused both jurors nine and twelve.

Defendant then raised a *Batson* challenge, the prosecution responded, and the court ruled on the issue. Therefore, the issue of whether defendant raised a prima facie case of discrimination based on race is moot, and our review begins with the second step of a *Baston* analysis. *Id*. at 338. In regard to juror nine, the prosecution stated that she was dismissed because "she indicated that she could not find the defendant guilty without any scientific evidence." As to juror twelve, the prosecution cited her "problems with the justice system" as the reason for the peremptory challenge. The prosecution thus offered reasons that were racially neutral on their face, and the court properly moved to the third step. *Id.* at 337-338.

The trial court did not clearly err in holding that the peremptory challenges did not constitute purposeful discrimination. Here, juror nine stated that she would not be able to convict defendant without scientific evidence, but also stated that she would be fair. Given these inconsistent statements by juror nine, along with the prosecution's legitimate concern regarding juror nine's statement because there was no scientific evidence linking defendant to the arson in this case, we are not left with a definite and firm conviction that the trial court erred in accepting the prosecution's race-neutral explanation for the peremptory challenge. See *McDade*, 301 Mich

App at 356. In regard to juror twelve, she also stated that she could be fair, and noted several times that she would not allow her work with regard to the justice system to influence this case. However, juror twelve also indicated that her research involved data from the Wayne County justice system and that she believed the system was not always fair and did not work. Juror twelve's belief that the justice system was not always fair and was ineffective reasonably concerned the prosecution that her experiences might not be set aside, despite her assurances to the contrary. The court did not clearly err in recognizing this potential bias as legitimate in finding that the challenge was not racially motivated.

"[A] defendant is not entitled to a jury of a particular racial composition as long as no racial group is systematically and intentionally excluded." *Knight*, 473 Mich at 351. The record reflects that no racial group was intentionally excluded. The prosecution offered race-neutral reasons for rejecting the two jurors at issue. The record does not show that these reasons were a mere pretext for discrimination, and, thus, does not leave us with a definite and firm conviction that the trial court erred in accepting the prosecution's race-neutral reasons for its peremptory challenges.

Defendant next argues that the court and his trial counsel mishandled the revelation by a juror that she became concerned when she saw a certain spectator in the courtroom gallery. The juror believed the spectator had been involved in witness intimidation in a previous trial in which she participated as a juror. The juror explained that she "stiffened up" and was "real nervous" because of spectator's presence. Several jurors asked her if she was okay. The juror told the court that although she did not mention who made her nervous, the other jurors "knew it was a spectator" and "it was obvious who it was." However, she told the other jurors that her concern was unrelated to the trial. Further, she had no concerns about witness intimidation in this case, and she was even willing to remain as a juror as long as the spectator was not called as a witness. Based on the information, all parties and the trial court agreed to dismiss the juror. Defendant now claims that the trial court should have interviewed the other jurors to ensure there was no prejudice, and that his counsel was ineffective for failing to move for a mistrial.

Initially, defendant waived any claim that the court erred because, through counsel, he suggested and accepted dismissal of the juror as the exclusive remedy for the incident. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). As for his claim of ineffective assistance, defendant did not preserve the issue because he did not move for a new trial or an evidentiary hearing with the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant filed a motion to remand for a *Ginther*[4] hearing in this Court, but his motion was denied. *People v Flake*, unpublished order of the Court of Appeals, entered March 28, 2014 (Docket No. 317325). Accordingly, review "is limited to mistakes apparent from the record." *Heft*, 299 Mich App at 80.

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301

---

[4] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

Defendant asserts that his counsel should have requested a mistrial because the juror's statements to the rest of the jury tainted the jury deliberations. A criminal defendant has a constitutional right to be tried by an impartial jury. *People v Miller,* 482 Mich 540, 547; 759 NW2d 850 (2008), citing US Const, Am VI; Const 1963, art 1, § 20. Jurors are presumed to be impartial unless the contrary is shown. *Miller*, 482 Mich at 550. "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id.* A new trial is only required where a "fair and impartial trial was not had." See *id.* at 551 (citation omitted); MCL 600.1354; see also *People v Wells*, 238 Mich App 383, 390; 605 NW2d 374 (1999) (explaining that the "grant or denial of a motion for a mistrial is within the sound discretion of the trial court, and absent a showing of prejudice, reversal is not warranted.").

It was not unprincipled for the court to dismiss the juror and continue with the trial. There was no showing that the juror's reaction negatively impacted the other jurors or created any prejudice toward defendant. Rather, the juror indicates that she deflected her concerns away from the trial. Defendant only speculates at the unknown thoughts of the other jurors and does not show impartiality. For these reasons, there were no grounds for a mistrial regarding this incident, and, based on the juror's statements, there was no indication that the remaining jurors needed to be interviewed by the trial court. Further, because trial counsel is not ineffective for failing to bring a meritless motion, defendant's ineffective assistance of counsel claim lacks merit. *People v Hardy*, 494 Mich 430, 445; 835 NW2d 340 (2013). Moreover, the trial court instructed the jury not to draw any inferences from the juror's dismissal, and a jury is presumed to follow its instructions. *Armstrong*, 490 Mich at 294.

Defendant next argues the evidence presented at trial was insufficient to prove he committed the arson. We disagree. Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted). All evidence is reviewed in the light most favorable to the prosecution, *id*., and "[a]ll conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008).

Defendant argues that the prosecution failed to prove he was one of the two men on the surveillance tape that committed the arson. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Therefore, it is axiomatic that the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. See *Russell*, 297 Mich App at 721. "The credibility of identification testimony is a question for the trier of fact." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

There was sufficient evidence presented to establish defendant's identity. The victim's son testified that defendant was alone in the home with defendant before the fire. A phone,

registered to defendant, and a phone case were found on the porch of the home. The phone case had water and fire damage. The descriptions of the car the perpetrators arrived in matched several of the witnesses' description of defendant's red Camaro. The surveillance video and still images taken from the church showed a vehicle that looked similar to defendant's car, and the video footage of the movement of the vehicle to and from the home the night of the fire matched witness testimony. "Circumstantial evidence and reasonable inferences that arise from [the] evidence can constitute satisfactory proof of the elements of the crime." *Kanaan*, 278 Mich App at 619. Viewing the evidence in the light most favorable to the prosecution, plaintiff submitted sufficient evidence for the jury to find defendant was one of the two individuals on the surveillance video.

Defendant next argues that the sentence imposed was disproportionate. He asserts that his sentence at the high end of the guideline range was disproportionate because the evidence was insufficient to convict him and because he had no prior assaultive convictions. We disagree. We review the proportionality of a sentence for an abuse of discretion. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011).

"A sentence that falls within the appropriate sentencing guidelines range is presumptively proportionate." *Id*. Further, this Court must affirm a minimum sentence that falls within the appropriate guidelines range "absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10); see also *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). Although counsel below indicated some disagreement with the sentencing variables, defendant does not argue on appeal that there was an error in scoring or that the court below relied upon inaccurate information. Defendant's primary argument is that the evidence did not show he was one of the perpetrators of the arson. As noted *supra*, there was sufficient evidence to establish defendant's identity. Defendant also argues that the sentence is disproportionate to "his prior criminal history," but does not argue that his criminal history was not properly reflected in the scoring of the prior record variables.

Affirmed.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-7-