# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JACOB MICHAEL SCHRAM,

        Defendant-Appellant.

UNPUBLISHED
December 15, 2016

No. 329169
Berrien Circuit Court
LC No. 2015-015109-FH

Before: WILDER, P.J., and MURPHY and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted by a jury of operating or maintaining a methamphetamine laboratory (meth lab), MCL 333.7401c(2)(f), and operating or maintaining a meth lab within 500 feet of school property, MCL 333.7401c(2)(d). The prosecution sought enhancement of defendant's sentences under MCL 333.7413(2), which concerns second or subsequent offenses for certain drug crimes and allows for imprisonment of not more than twice the term otherwise authorized by law. The trial court sentenced defendant to concurrent terms of 20 to 40 years' imprisonment for each offense.[1] Defendant appeals as of right, and we affirm.

On appeal, defendant first argues that he was denied the effective assistance of counsel, where his trial attorney failed to challenge the chain of custody underlying the contraband responsible for his convictions, and where counsel failed to adequately probe a witness during cross-examination regarding the depths of her drug addiction and how it affected her initial confession that implicated defendant. Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463

---

[1] We note that defendant's double jeopardy protections are not infringed in this case, given that operating or maintaining a lab for purposes of MCL 333.7401c(2)(f) requires the drug involved to be meth, while operating or maintaining a lab within 500 feet of a school under MCL 333.7401c(2)(d) can pertain to drugs other than meth; each offense has an element that the other does not, i.e., the involvement of meth production and a location requirement. *People v Routley,* 485 Mich 1075; 777 NW2d 160 (2010).

Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

With respect to the chain-of-custody argument, a detective testified in regard to the execution of a search warrant at a home where, according to the prosecution and as supported by the evidence, defendant was living, along with other individuals. As to the inculpatory evidence discovered at the house indicative of the operation and maintenance of a meth lab, the detective framed his testimony in terms of what "we" found at the house. The detective himself photographed all of the evidence, which evidence was then moved to stations set up directly outside the house and processed, with some of the evidence being tested on site by another officer because of its hazardous nature. It is clear from his testimony that the detective was personally involved in searching the residence, along with other officers who comprised a narcotics unit or drug enforcement team. Defendant maintains that an evidence card, which he attached to a rejected motion to remand, revealed that an officer other than the detective had found some of the incriminating evidence, yet this officer never testified, creating a gap in the chain of custody.

First, assuming that this unnamed officer located some of the evidence during the execution of the warrant, it is quite possible that the detective also had personal knowledge regarding the initial seizure of the evidence in the home and had viewed the seizure; again, the detective indicated that "we" found meth-related evidence, that he photographed all of the evidence, and that he was actively involved in the search. We cannot conclude on this record that there was a break or gap in the chain of custody. See *People v White*, 208 Mich App 126,

129-134; 527 NW2d 34 (1994).[2]  And counsel need not raise meritless or futile objections. *People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010).  Second, any deficiencies in the chain of custody generally "go to the weight afforded to the evidence, rather than its admissibility." *White*, 208 Mich App at 133.  Thus, had trial counsel objected, the evidence would still have been admitted at trial.  Third, trial counsel presented a defense that challenged whether there was proof beyond a reasonable doubt that defendant was connected to the meth operation.  Defendant relied in part on a witness, referenced earlier, who was a resident of the house and who, at trial, claimed sole responsibility for the operation and maintenance of the meth lab, although she had implicated defendant at his preliminary examination pursuant to a plea agreement that evaporated with her trial testimony.  Defense counsel's determination to pursue this theory instead of what clearly would have been a flawed attack on the admissibility and legitimacy of the meth-related evidence did not fall below an objective standard of reasonableness.  Finally, given our discussion, defendant cannot establish the requisite prejudice, even assuming deficient performance, considering that either there was no gap or break in the chain of custody or, accepting a deficiency, the evidence would still have been admissible.  And under the totality of the circumstances, including consideration of the unchallenged admission of the crime-scene photographs of the meth evidence, we cannot find that the jurors would have given the evidence less or little weight simply because one officer involved in the search did not testify.  Reversal is unwarranted.

With respect to defense counsel's examination of the witness who testified against defendant at the preliminary examination but in his favor at the trial, we are bewildered by defendant's appellate argument.  The record reflects that, on cross-examination, defense counsel probed quite extensively into the issue of the witness's drug addiction and how that addiction, in conjunction with purported police pressure during interrogation, allegedly played a role in her falsely implicating defendant at the start of the case.  The factual predicate of defendant's argument is nonexistent; there was no deficient performance, nor a showing of prejudice.

Finally, defendant argues that the trial court abused its discretion by imposing minimum sentences of 20 years' imprisonment, given that the offenses were victimless, did not involve children, were not committed for monetary gain, and were reflective of a health crisis in relationship to addiction, not violent criminality.  Defendant contends that the 20-year minimum sentences were excessive, failed to consider defendant's potential for rehabilitation, and were more than necessary to discipline defendant, protect society, and to deter others from committing like offenses.  While not employing the nomenclature, defendant is effectively arguing that the sentences were not proportionate to the seriousness of the offenses or the history of the offender, which is an issue that we review for an abuse of discretion on appeal.  *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011).

Defendant's guidelines minimum sentence range was 78 to 130 months, and the trial court, exercising its discretion, doubled the guidelines range to 156 to 260 months under MCL

---

[2] Defendant does not assert that there was a problem with the chain of custody beyond the initial seizure stage.

333.7413(2), considering defendant's past conviction for operating or maintaining a meth lab in 2010. Under MCL 333.7413(2), "an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both." MCL 333.7413(2) authorizes, but does not compel, a sentencing court to double the guidelines range for purposes of imposing sentence. *People v Williams*, 268 Mich App 416, 430-431; 707 NW2d 624 (2005). The 20-year minimum sentences given to defendant fell within the appropriate guidelines range, as doubled pursuant to MCL 333.7413(2). And, in light of defendant's failure to claim a scoring error or inaccurate sentencing information, MCL 769.34(10) mandates affirmance of the sentences. *Williams*, 268 Mich App at 431. However, defendant's proportionality argument implicates constitutional protections, and so we must continue with our analysis.

"A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). A defendant can only overcome the presumption by presenting unusual circumstances that would render a presumptively proportionate sentence disproportionate. *Id.* Here, defendant has not presented us with unusual circumstances such that we can find his sentences disproportionate. At sentencing, the trial judge observed that defendant was "one of the most unlikeable, manipulative, destructive, and antisocial individuals I've run across." Defendant ignores the evidence presented at trial that the manufacture of meth involves hazardous materials and poses a substantial risk of fire, that, despite these dangers, the meth operation was conducted in a residential neighborhood near a school, that the meth was being distributed, and that the meth operation had been ongoing for about a year if not longer. Defendant also loses sight of the fact that he committed this crime in the past and evidently did not learn from his mistake and that he has an extensive criminal background. We conclude that the 20-year minimum sentences were proportionate to the seriousness of the offenses and the history of the offender and that there was no error by the trial court in imposing the sentences. See *People v Steanhouse*, 313 Mich App 1, 45-46; 880 NW2d 297 (2015) (discussing the principle of proportionality). Reversal is unwarranted.

Affirmed.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Colleen A. O'Brien