*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 22, 2023

Plaintiff-Appellee,

v

No. 360425
Kent Circuit Court
LC No. 20-000322-FC

JORDAN SCOTT LOOMIS,

Defendant-Appellant.

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

Defendant, Jordan Scott Loomis, appeals as of right his jury trial conviction of first-degree felony murder, MCL 750.316(1)(b). The trial court sentenced defendant to serve life in prison, without the possibility of parole. We affirm.

This case arises out of the fatal stabbing of James Robertson. Defendant contacted Robertson to buy crack cocaine. Robertson drove defendant to an ATM to withdraw money for the drugs, but defendant's card was declined due to insufficient funds. Robertson then drove defendant to a second ATM to try a different debit card. When they arrived in the parking lot, defendant reached over and stabbed Robertson multiple times in the chest and neck. Robertson offered defendant $50 to "just let him go," but defendant declined. Defendant then drove Robertson's car around the area until Robertson died from his injuries. Defendant then purchased drugs from another individual with Robertson's money. The victim's body was found partially submerged along the Grand River in Ottawa County with eight sharp-force injuries, including both stab wounds and incised wounds. At trial, defendant claimed self-defense.

Defendant raises two issues on appeal. First, defendant argues that the trial court erred by admitting evidence from the search of the victim's car and the search of defendant's cell phone. Second, defendant claims he was denied his constitutional right to a speedy trial.

## I. ADMISSIBILITY OF EVIDENCE

We first address defendant's argument that the trial court erred in admitting evidence from the victim's car and defendant's cell phone. We review for an abuse of discretion the trial court's

decision to admit or exclude evidence. *People v Houston*, 261 Mich App 463, 465; 683 NW2d 192 (2004). "A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes." *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2007).

To preserve an evidentiary issue for review, a defendant must object to the admission of the evidence at trial and specify the same ground for objection that it asserts on appeal. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). If the defendant fails to object, the issue is unpreserved. *People v Snider*, 239 Mich App 393, 420; 608 NW2d 502 (2000). This Court reviews unpreserved claims of error for plain error that affected substantial rights. *Id*. To establish that the plain error affected his substantial rights, the defendant must show that the error "affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thorpe*, 504 Mich at 252-253.

## A. VICTIM'S CAR

Defendant preserved his evidentiary claim relating to the search of the victim's car by raising a chain-of-custody argument in the trial court. See *Thorpe*, 504 Mich at 252. Defendant asserts that the trial court erred in denying his motion to suppress evidence uncovered in the victim's car because the police failed to immediately seize the vehicle and preserve evidence before it was tampered with by a third party, thereby breaking the chain of custody. Defendant also asserts that exculpatory evidence could have been removed the car. We disagree with defendant's claims of error.

"In order to obtain the admission of real evidence, a prosecutor must lay a foundation identifying the items as what they are purported to be and displaying that the items are connected with the accused or the crime." *People v Jennings*, 118 Mich App 318, 322; 324 NW2d 625 (1982). See also MRE 901(a). When determining if an object should be admitted, the trial court should consider the nature of the article, the circumstances surrounding the preservation and custody of it, and the possibility of intermeddlers tampering with it. *People v Muhammad*, 326 Mich App 40, 59; 931 NW2d 20 (2018). Admission of evidence "does not require a perfect chain of custody," and "any deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility once the proffered evidence is shown to a reasonable degree of certainty to be what its proponent claims." *People v White*, 208 Mich App 126, 130-131; 527 NW2d 34 (1994).

Police officers located the victim's car in Huff Park on November 27, 2019, amidst a missing person investigation. Officers noticed the car was unlocked so they opened the door and found the keys on the driver's seat. They opened the trunk and saw it was full of miscellaneous items. They closed the trunk and began searching for Robertson. The officers performed an extensive search of Huff Park, but they did not find anything or anyone suspicious. The officers reported there was no crime involved that they were aware of, and they were advised to leave the car at the park. Sometime soon after the vehicle was located, representatives from Express Auto repossessed the vehicle and moved it to Express Auto's location in Wyoming, Michigan.

On November 29, 2019, the victim's friend, Carolyn Stewart, who had been looking for the victim, went to Express Auto to take the victim's belongings out of the car. In doing so Stewart testified that she tried to be as careful as she could and even put on gloves when she was allowed in the car so as not to disturb potential evidence of a crime. Ms. Stewart also took photos before she touched anything. Ms. Stewart then took the victim's belongings out of the car, including some clothes and an old cell phone. Later that afternoon the police took possession of the car and asked Ms. Stewart to come to the police station with the items she had retrieved from the car. Ms. Stewart gave everything she took to the police.

That same day, a crime scene technician with the Grand Rapids Police Department examined the car once it was taken into police custody. The technician found blood stains on the backseat and the front passenger interior door. The stained areas as well as the steering wheel were preserved and swabbed for DNA analysis. On December 4, 2019, police discovered the victim's body partially submerged in the Grand River. DNA was collected from the victim and analysis revealed that the victim's DNA matched that of the blood stains found in the car.

There is a possibility that the victim's friend could have, either inadvertently or purposefully, tampered with the car and evidence within it before the police seized it. It is undisputed that she took items from the car. However, it is also undisputed that the car the police seized was in fact the victim's car that was involved in his murder. Therefore, the evidence from the victim's car, which was limited to the DNA evidence derived from the blood stains on the vehicle's interior along with defendant's own DNA from the steering wheel, is admissible. Any deficiency in the chain of custody went to the weight of this evidence, and defendant was able to argue its weight at trial. See *White*, 208 Mich App at 130-131. Accordingly, the trial court did not abuse its discretion by denying defendant's motion to suppress evidence obtained from the victim's car.[1]

## B. DEFENDANT'S CELL PHONE

Turning to defendant's arguments related to the cell phone, although defendant initially moved to suppress the cell-phone evidence on Fourth Amendment grounds, he withdrew his motion before the trial court held an evidentiary hearing or ruled on the motion. This issue is, at best, unpreserved. See *Snider*, 239 Mich App at 406. This Court reviews unpreserved claims of error for plain error that affected substantial rights. *Id*. at 420. Indeed, given that defendant withdrew his motion to suppress we could consider the issue waived. See *People v Adams*, 245 Mich App 226, 239-240; 627 NW2d 623 (2001).

Police officers must generally secure a warrant before conducting a search of a cell phone. *Riley v California*, 573 US 373, 386; 134 S Ct 2473; 189 L Ed 2d 430 (2014); *People v Hughes*,

---

[1] Defendant also makes the cursory assertion that the police violated due process by failing to preserve exculpatory evidence that might have been found in the car. This argument is unpreserved and without merit. Defendant admitted that he stabbed the victim, and he has not even attempted to demonstrate that the police failed to preserve anything potentially exculpatory from the car. See *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012).

506 Mich 512, 527; 958 NW2d 98 (2020). A search and seizure conducted without a warrant is unreasonable unless it falls within a recognized exception to the warrant requirement. *People v Rodriquez*, 327 Mich App 573, 583; 935 NW2d 51 (2019). Voluntary consent is one such exception. *Id*. "Consent permits a warrantless search so long as it is unequivocal, specific, and freely and intelligently given." *Id*. at 584. Whether consent is voluntary depends on the totality of the circumstances. *Id*. Consent to search must come from someone who has authority to give it, meaning either the property's owner or someone "who shares common authority over the property." *People v Mead*, 503 Mich 205, 217; 931 NW2d 557 (2019).

Defendant argues that the record is unclear as to whether the police officers obtained his phone from the mother of his child, Emma Fox, before they obtained it during his interview with police on December 1, 2019. Defendant also argues that he did not "voluntarily consent" because he was led to believe that the police had already looked through his phone in some way, and he "likely thought that he had no choice except to consent to a search of his phone." Defendant further argues that Fox would not have had authority to consent to a search of defendant's phone as there is no record evidence that Fox had common authority over the phone. These assertions are not, however, supported by the record in this case.

At trial, Grand Rapids Police Detective Tim DeVries testified that defendant turned over his phone to police during his interview. In defendant's motion to suppress the cell-phone evidence, defendant conceded that he "was asked for and gave consent to search his cell phone." He maintained, however, that before he gave his consent police officers went to the apartment that defendant and Fox shared, and Fox gave the officers defendant's phone. He further asserted that at his December 1, 2019 police interview, despite being told that he was not under arrest, he "had no other choice than to allow officers to search his phone." Because defense counsel withdrew the cell-phone portion of the motion to suppress before the trial court issued a decision, a record was never developed to support defendant's assertions that Fox gave the phone to police or that he had "no other choice" than to give his phone to police during his interview. As the appellant, it is defendant's burden to furnish this Court "with a record to verify the factual basis of any argument…." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Defendant has failed to provide this Court with a record to support his claims that the police illegally searched his phone at any point, and he has not shown error on this basis.

Moreover, in his closing argument, defense counsel used the cell-phone data from the victim's and defendant's phones to support defendant's testimony about the timeline of his self-defense claim. Having withdrawn his motion to suppress this evidence, and having endeavored to use it for his benefit during trial, defendant should not be heard to complain on appeal that the admission of this evidence constituted plain error. See *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003) ("[A]n appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence."). Defendant has not shown that an error, let alone a plain error, has occurred from the admission of defendant's cell-phone evidence.

Furthermore, even if defendant had shown that an error occurred, defendant's substantial rights were not affected by the admission of the cell-phone evidence because the outcome of the trial would have been the same regardless of whether the cell-phone evidence was admitted. The cell-phone evidence was not the only substantial evidence admitted at trial. There was evidence of defendant's DNA on the steering wheel of the victim's car; the victim's blood in the backseat

of the car; the testimony of two separate jail inmates detailing defendant's admissions to the murder; defendant's letters to one of the inmates; and the discovery of the murder weapon, a knife buried at defendant's home, that was consistent with the victim's wounds. There was more than sufficient evidence of defendant's guilt even if the cell-phone evidence was excluded from the trial. Therefore, defendant's substantial rights were not affected by the admission of the cell-phone evidence.

## II. SPEEDY TRIAL

Defendant further argues that he was denied his constitutional right to a speedy trial. We disagree.

The right to a speedy trial is guaranteed to criminal defendants by the United States Constitution and the Michigan Constitution, as well as by statute and court rule. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A); *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). We review de novo whether defendant was denied his right to a speedy trial, and this Court reviews the trial court's factual findings for clear error. *Williams*, 475 Mich at 250. Additionally, "this Court must determine whether any error was harmless beyond a reasonable doubt." *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). "Violation of the constitutional right to a speedy trial requires dismissal of the charge with prejudice." *Id*. at 664-665; MCR 6.004(A).

When determining whether a defendant has been denied the right to a speedy trial, the length of delay is not solely determinative. *People v Cain*, 238 Mich App 95, 112-113; 605 NW2d 28 (1999). The court applies a four-part balancing test that includes: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262. The delay period commences at defendant's arrest. *Id*. at 261. If the total delay from arrest to trial is under 18 months, then the burden is on the defendant to show that he suffered prejudice. *Waclawski*, 286 Mich App at 665. But if the delay is over 18 months, prejudice is presumed and the burden is on the prosecution to rebut the presumption. *Id*. Scheduling delays and delays caused by the court are attributed to the prosecutor but should be "given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id*. at 666. A defendant can experience two types of prejudice while awaiting trial—prejudice to his person and prejudice to the defense. *Id*. at 668. Prejudice to the defense is the more serious prejudice to consider because a defendant's inability to adequately prepare his defense "skews the fairness of the entire system." *Id*.

As to the first factor in this case, the length of the delay—defendant was incarcerated on December 1, 2019, and the trial began on December 13, 2021. Defendant had to wait 24 months from the time of his incarceration to the time of his trial. Because this wait was longer than 18 months, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury.

As to the second factor in this case, reason for the delay—this case was first set for trial on May 4, 2020; however, it was "adjourned due to other reasons." Defendant's next trial date was scheduled for August 17, 2020, and it was also "adjourned due to other reasons." The delay in this case was due to the Covid-19 pandemic shutting down the jury trial system in March 2020. This

Court has concluded that delay primarily resulting from the Supreme Court's decision to suspend jury trials in response to the Covid-19 pandemic is not attributable to either party. *In re Sanborn*, 337 Mich App 252, 270; 976 NW2d 44 (2021).

As to the third factor in this case, defendant's assertion of the right—defendant twice moved to dismiss for failure to receive a speedy trial. Defendant first moved to dismiss on January 19, 2021, and the trial court denied the motion on January 29, 2021. Later, defendant filed a second motion to dismiss on August 17, 2021, and the trial court denied the motion on August 27, 2021. Therefore, defendant clearly asserted the right to a speedy trial.

As to the fourth factor in this case, prejudice to defendant is presumed because the delay was longer than 18 months; however, there is no indication of actual prejudice to the defense. Defendant has not asserted that he was unable to secure witnesses or evidence for trial due to the delay, and the evidence of defendant's guilt was overwhelming. We conclude that defendant has failed to demonstrate prejudice to his defense as a result of the delay.

Accordingly, defendant's speedy trial claim lacks merit, and we deny relief on this issue.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola