*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER KIRK ELLEDGE,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2019

No. 342464
Wayne Circuit Court
LC No. 17-003487-01-FC

Before: METER, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

This case arises from a sexual assault. Presented with DNA evidence identifying defendant, Christopher Kirk Elledge, as the perpetrator, the jury convicted him of two counts of first-degree criminal sexual conduct. On appeal, defendant alleges error with regard to the admission of other-acts evidence and the denial of his motion for a mistrial, while also asserting ineffective assistance of counsel. Finally, defendant argues that his within-guidelines sentence is grossly disproportionate to the offense and the offender and that it constitutes cruel and unusual punishment. Finding no reversible error, we affirm defendant's convictions and sentences.

## I. BACKGROUND

The events giving rise to this case occurred on New Year's Eve of 1995, when a high school student was sexually assaulted. Although the police did not send the DNA evidence from the assault for testing until almost two decades later, that testing eventually identified defendant as the perpetrator. At trial, the victim testified regarding her recollection of the crime that occurred over 20 years earlier. The victim testified that she was a high school student working at a restaurant in Royal Oak. After finishing her work shift, she rode a bus back to Detroit and began walking home. A man approached her between a park and an elementary school, and the victim believed that the man had a weapon under his jacket. He sexually assaulted the victim while telling her not to look at him. At the conclusion of the crime, he told the victim to stay there until he was gone.

The victim went to Detroit Receiving Hospital, where a rape kit was performed. Although the hospital took DNA samples, the police failed to send those samples for testing until

2012 or 2013, when the crime laboratory sent backlogged rape kits to various forensic-science centers. The victim testified that she did not know her attacker, but was only able to say that he was a black man. Various forensic witnesses testified that the DNA samples taken from the victim matched defendant.

At trial, the prosecutor also presented an "other acts" witness, LJ. She testified that, when she was 16 years old in 1997, she was similarly attacked. LJ testified that a man approached her and pulled her down an alley. The man had a gun, and he told her not to scream or run, while he sexually assaulted her. At the conclusion of the assault, he told the victim to stay until he was gone. LJ did not know her attacker, and she was not able to identify him in a photographic lineup. LJ went to Sinai Grace Hospital, where a rape kit was performed and the hospital took DNA samples. A forensic scientist testified that there was a case-to-case match between the results of the DNA samples obtained from LJ and the results of the DNA samples obtained from the victim in this case. Yet, the rape kit itself from the hospital's examination of LJ was not admitted into evidence in this trial.

After LJ left the witness stand, she began crying in a room adjacent to the courtroom. Because her crying was audible in the courtroom, the trial judge excused the jury until LJ could be removed. LJ's conduct coincided with the beginning of testimony from Detroit Police Department Officer Martha Grace Willhelm, who participated in the investigation of both this case and the case involving LJ.

After the trial judge ended the disturbance caused by LJ, and during Officer Willhelm's testimony, the prosecutor asked her whether it was "part of the protocol for [her] to go out and find the person" "once a warrant request is signed." The officer responded that she "usually" would "but in this case he was already incarcerated." Officer Willhelm immediately apologized, presumably realizing her mistake in referencing defendant's prior incarceration. Likewise, the prosecutor immediately agreed to "strike the answer." The trial judge excused the jury to entertain defendant's motion for a mistrial, which the trial judge denied. When the jury returned to the courtroom, the trial judge instructed them to disregard the officer's testimony referencing defendant's prior incarceration.

The jury found defendant guilty of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b, regarding the 1995 sexual assault of the victim. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 40 to 60 years in prison, which was within but near the top of his advisory-guidelines range. Defendant now appeals as of right.

## II. ANALYSIS

### A. "OTHER ACTS" EVIDENCE

Defendant first argues that the trial court erred by admitting testimony and other evidence relating to the sexual assault against LJ as "other acts" evidence under MRE 404(b). Absent questions of statutory interpretation, which are not present here, we review "a trial court's determination of evidentiary issues for an abuse of discretion." *People v Smith*, 456 Mich 543, 549; 581 NW2d 654 (1998). An abuse of discretion occurs when the trial court chooses an

outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "The decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion." *People v Golochowicz*, 413 Mich 298, 322; 319 NW2d 518 (1982).

MRE 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

When other-acts evidence is admitted to prove identity, "*Golochowicz* identifies the requirements of logical relevance when the proponent is utilizing a *modus operandi* theory to prove *identity*" as the prosecutor did in this case. *People v VanderVliet*, 444 Mich 52, 66; 508 NW2d 114 (1993). To be admissible under the *Golochowicz* standard, four requirements must be met:

> (1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. [*People v Waclawski*, 286 Mich App 634, 673; 780 NW2d 321 (2009) (cleaned up).]

The first, third, and fourth *Golochowicz* requirements are easily met here. The second requirement, however, is a closer call. In general, the logical link for the second requirement "is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused." (Cleaned up). "The commonality of circumstances must be so unusual and distinctive as to be like a signature" and "much more is demanded than the mere repeated commission of crimes of the same class." *Id*. at 310-311 (cleaned up). The "manners or systems employed by the perpetrator of the uncharged crime and the crime in question" must involve "such distinctive, unique, peculiar or special characteristics as to justify an ordinarily reasonable juror to infer that both were the handiwork of the same person." *Id*. at 312.

We need not resolve this question. Even assuming arguendo that the other-acts evidence should not have been admitted, any error was harmless. In the context of other-acts evidence, "a preserved nonconstitutional error is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Denson*, 500 Mich 385, 409; 902 NW2d 306 (2017) (cleaned up). In determining whether an error was outcome determinative, this Court focuses on the nature of the error "in light of the weight and strength of the untainted evidence."

*Id*. at 409-410 (cleaned up). Here, the prosecutor presented DNA evidence that overwhelmingly identified defendant as the perpetrator of the sexual assault of the victim. At oral argument, defense counsel conceded that there was little in reason or evidence to counter the weight and strength of this identification evidence. Accordingly, we conclude that it was not more probable than not that the outcome would have been different had the other-acts evidence been excluded. See *Smith*, 243 Mich App at 680-681.

In a related argument raised in defendant's Standard 4 brief, Administrative Order 2004-6, Standard 4, defendant takes issue with the fact that the trial court admitted evidence related to the sexual assault against LJ. Although defendant frames the issue as one of prosecutorial misconduct, he is arguing that the admission of this evidence was improper and violated his constitutional right to due process, and we will treat it as such. See *People v Latz*, 318 Mich App 380, 384; 898 NW2d 229 (2016). We review constitutional issues de novo, *People v Bosca*, 310 Mich App 1, 56; 871 NW2d 307 (2015), and we review unpreserved constitutional claims for plain error affecting a defendant's substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Defendant argues that the evidence with respect to LJ was inadmissible because there were holes in the chain of custody regarding the DNA evidence. Yet, "the admission of real evidence does not require a perfect chain of custody." *People v White*, 208 Mich App 126, 130; 527 NW2d 34 (1994). Instead, "any deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility once the proffered evidence is shown to a reasonable degree of certainty to be what its proponent claims." *Id*. at 130-131. Defendant could—and did—poke holes in the chain of custody, but any deficiencies in that chain went to the weight of the evidence rather than its admissibility. *Id*.

## B. MOTION FOR MISTRIAL

Defendant also argues that the trial court abused its discretion when it denied his motion for a mistrial after Officer Willhelm mentioned that defendant was already incarcerated when it was time to arrest him for this case. "The denial of a motion for a mistrial is reviewed for an abuse of discretion." *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003).

A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial. *Id*. Although "[r]eferences to a defendant's prior incarceration are, unless specifically ruled otherwise, generally inadmissible," *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983), "not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial," *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007). And "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).

When asked about whether it was part of the protocol for her to go out and arrest the person once a warrant request was signed, the police officer testified that she "usually" would "but in this case he was already incarcerated." She immediately apologized, presumably realizing her mistake. Likewise, the prosecutor immediately agreed to "strike the answer." This

is precisely the type of unresponsive, volunteered mention of incarceration that Michigan law makes clear does not entitle a defendant to a mistrial. Moreover, as soon as the jury returned to the courtroom, the trial court immediately instructed the jury to disregard the officer's improper testimony. "Jurors are presumed to follow their instructions, and those instructions are presumed to cure most errors." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 542; 775 NW2d 857 (2009) (cleaned up).

To bolster his argument, defendant also points to LJ's crying that occurred at about the same time as the officer's statement. Yet, defendant does not argue that the trial court did anything wrong in its handling of the situation. Defendant's attempt to connect the outburst of the witness with the police officer's testimony about defendant's past incarceration is a stretch. The record is clear that the police officer, unresponsively and apparently accidentally, provided the testimony that defendant was incarcerated, acknowledged her mistake, and apologized. The prosecutor apologized and agreed to strike the testimony, which the trial court immediately did. A seemingly unrelated emotional outburst heard from outside the courtroom, albeit shortly before the improper testimony, has no apparent connection with the police officer's testimony at issue.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant also argues that his trial counsel rendered ineffective assistance of counsel. Defendant failed to preserve this issue by moving for a new trial or an evidentiary hearing below. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). When a defendant fails to preserve an ineffective-assistance claim, this Court's review is "limited to mistakes that are apparent from the record." *Id.* at 539. "Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

Defendant first argues that, although his counsel objected to the admission of the rape kit of JL during the preliminary examination in this case, counsel should have again objected at a subsequent hearing and during trial. This argument is meritless because his trial counsel *did* object to the admission of this rape kit during trial, and the trial court *sustained* the objection.

Defendant next argues that his counsel failed to move for a mistrial after it was discovered that one of the jurors was not from Wayne County, was "looking at [him] in a quizzical way," and "became bias[ed] toward Defendant." Nothing in the record supports defendant's assertions. Although this issue is being raised in a Standard 4 brief, it was incumbent upon to defendant to alert the trial court (or at least his attorney) if he truly believed a juror was looking at him in a peculiar way or was otherwise biased. Further, even if we were to

assume that both of defendant's factual assertions were true, i.e., that the juror did not live in Wayne County and gave him quizzical looks during trial, there is still no reason for this Court to make the same jump that defendant does—that the jury was automatically biased against him. Accordingly, we reject this argument.

## D. SENTENCING

Finally, defendant asserts that his sentence is unreasonable and constitutes cruel and unusual punishment. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (cleaned up). But when a trial court "does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196; see also MCL 769.34(10). In this case, defendant concedes that his sentence was within the guidelines. And he does not make an argument that there was an error in scoring or that the trial court relied on inaccurate information.

The limitation on review for reasonableness does not apply, however, to claims of constitutional error. *People v Powell*, 278 Mich App 318, 323; 750 N2d 607 (2008). The United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII, as well as "grossly disproportionate sentences," *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). Yet, "[a] sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). Defendant concedes that his sentence was within the accurately scored guidelines range and offers virtually no explanation as to what unusual circumstances might make his presumptively proportionate sentence disproportionate. *Id*. Instead, he merely cites the fact that, given his age at the time of sentencing, he will likely die in prison. That is insufficient to warrant resentencing.

Affirmed.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle